United States Court of Appeals,

Fifth Circuit.

No. 92-1297.

Victor Wayne WALTERS, Petitioner-Appellant.

v.

James A. COLLINS, Director, Texas Dep't of Criminal Justice,
Institutional Division, Respondent-Appellee.

May 31, 1994.

Appeal from the United States District Court for the Northern
District of Texas.

Before WISDOM, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

WISDOM, Circuit Judge:

A state prisoner appeals from the district court's dismissal
of his petition for a writ of habeas corpus.  The district court
dismissed the petition as untimely under Rule 9(a) of the Rules
Governing Section 2254 Cases ("Section 2254 Rules").[1]  We conclude
that the state has not met its burden of making a particularized
showing of prejudice sufficient to support a Rule 9(a) dismissal.
Accordingly, we REVERSE the district court's dismissal of the
petition and REMAND to the district court for an evidentiary
hearing.

I.

On August 16, 1978, petitioner/appellant Victor Wayne Walters
was indicted for murdering Donald Lee Blagg.  Walters was indigent,
so the state trial court appointed Douglas H. Parks, a Dallas

---

[1]Rules Governing Section 2254 Cases in the United States
District Courts, R. 9(a), 28 U.S.C. foll. § 2254.

attorney, to represent him. Parks advised Walters to plead guilty.
Walters did. The trial judge sentenced Walters to life in prison.

This case involves Walters's attempt to obtain appellate
review of his life sentence. According to Walters's habeas
petition, he told Parks he wanted to appeal his life sentence, and
Parks assured him an appeal would be filed. The record, however,
contains no entry indicating that an appeal in Walters's case was
ever filed. The state makes much of the presence in the record of
a written waiver of appeal. That waiver was ineffective to waive
Walters's right to appeal, however. Only Parks signed the waiver
of appeal. Neither Walters nor the trial judge, whose signatures
the waiver form also required, signed it.[2] Parks later stated that
it was his usual practice to give an oral notice of appeal in open
court, and that he had "no reason to believe that his custom and
practice was different in this case".[3]

On November 30, 1978, three and a half months after his
conviction, Walters wrote to Parks inquiring about the status of
his appeal.[4] Parks responded on December 16, 1978 with a letter in

---

[2]1 Rec. 26 (Ex. C).

[3]Parks made this statement in his affidavit to the court in
Walters's state habeas proceeding. Record excerpts tab 11.

[4]Record Excerpts tab 9. Walters's letter states:

> Dear Sir:
>
> I'm writing you this letter to try to find out
> about my appeal. I have not heard from you so I
> thought I would write to see if you have heard anything
> about my appeal from the court.
>
> How long does an appeal take?

which he wrote:

> *This is to advise you that notice of appeal was given in the above named and numbered cause on August 16, 1978.* However, I was appointed by the Court to represent you at trial and have not been appointed as appellate attorney of record. You should contact the District Clerk to see who has been appointed to represent you on appeal.[5]

Parks's letter to Walters gave the wrong docket number. The letter referred to a notice of appeal having been filed in case "No. F78-6242-N"; Walters's case was numbered "F78-7290-IN". The record lists no written notice of appeal in case F78-7290-IN.

After doing some research to the best of his limited ability,[6]

_____

> Please write me and let me know what is happening with my appeal.
>
> As soon as you hear something please let me know.
>
> Thank you for your help.

[5]Record Excerpts tab 10 (emphasis added). The state notes that Parks's letter of December 16, 1978 is unsigned, but Parks's affidavit to the state habeas court acknowledges the letter's authenticity.

> We note, as did Walters's court-appointed counsel at oral argument, that Parks's letter to Walters was legally ineffective to dissociate himself as Walters's attorney. Under Texas law, the attorney-client relationship does not end upon the conviction of a court-appointed lawyer's client. The attorney must formally withdraw from the case; if the attorney does not, the attorney is considered counsel of record on appeal even if the attorney believes the representation ended at the trial level. *Ward v. State,* 740 S.W.2d 794, 796-800 (Tex.Crim.App.1987). This was also the rule at the time of Walters's trial. *See Harrison v. State,* 516 S.W.2d 192, 192-93 (Tex.Crim.App.1974).

[6]It should surprise no one that Walters had difficulty understanding the procedures he was required to follow to file a notice of appeal and request appointment of appellate counsel. One in Walters's circumstances could be expected to require a great deal of time to acquire the most rudimentary legal research skills. The state also does not dispute Walters's characterization of the prison law library, from which he was

Walters wrote to the state court in which he was convicted to ask about taking an appeal and having appellate counsel appointed. On October 5, 1979, the trial court held that Walters's notice of appeal was untimely.

Over nine years later, in February 1989, Walters filed a *pro se* petition for a writ of habeas corpus in a Texas district court. He alleged that he had been denied adequate assistance of counsel and had been denied the right to appeal his conviction. The state court, without holding a hearing, denied his petition on March 27, 1989. The Texas Court of Criminal Appeals affirmed the denial without opinion on June 7, 1989. By first seeking a writ of habeas corpus from the courts of Texas, Walters exhausted his state remedies.

Walters then filed a *pro se* petition for a writ of habeas corpus in federal district court. He again charged that he had been (1) denied adequate assistance of counsel because his trial counsel had failed to file a notice of appeal, (2) denied his right to appeal his conviction, and (3) denied equal protection of the laws. The case was referred to a magistrate judge who, without holding an evidentiary hearing, recommended that his petition be denied as untimely under Rule 9(a) of the Section 2254 Rules.[7] On

expected to divine the nature and extent of his rights, as "very limited".

[7]This rule provides:

> A petition may be dismissed if it appears that the state of which the respondent is an officer has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it

February 25, 1992, the district court adopted the magistrate judge's findings and conclusions and dismissed Walters's petition. The district court denied Walters a certificate of probable cause. He appealed, and on December 28, 1992, Judge Edith H. Jones of this Court granted him a certificate of probable cause[8] on the grounds that "[t]here is a substantial question whether the State's allegations of prejudice are relevant to the issue raised by the petitioner". We appointed counsel to represent Walters on this appeal.

## II.

At the outset we should emphasize the limited nature of our inquiry. This case presents one question: has the State of Texas made a sufficient showing of prejudice to support dismissal of Walters's petition under Rule 9(a). The merits of Walters's habeas petition, i.e., whether he was denied adequate assistance of counsel, are not before this Court. His petition is not frivolous.[9]

The state bears a heavy burden in seeking a dismissal based on Rule 9(a) of the Section 2254 Rules. Rule 9(a) codifies the equitable doctrine of laches as applied to habeas corpus

---

is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

[8]28 U.S.C. § 2253.

[9]*See, e.g., United States v. Gipson,* 985 F.2d 212, 215 (5th Cir.1993); *Lumpkin v. Smith,* 439 F.2d 1084, 1085 (5th Cir.1971) (per curiam).

petitions.[10]  The application of Rule 9(a) must be carefully limited to avoid abrogating the purpose of the writ of habeas corpus.[11]  The burden is on the state to (1) make a *particularized* showing of prejudice, (2) show that the prejudice was *caused* by the petitioner having filed a late petition, and (3) show that the petitioner has not acted with reasonable diligence as a matter of law.[12]  The showing of prejudice must be based on the specific challenge raised in the petition;  mere passage of time alone is never sufficient to constitute prejudice.[13]  The state must show that it has been prejudiced in its ability to respond to the allegations in the petitioner's petition;  it is irrelevant that the state has been prejudiced in its ability successfully to convict the petitioner again.[14]  The prejudice must have been caused by the petitioner's unreasonable delay in bringing the petition.  Finally, the petitioner's delay in bringing the petition must have been unreasonable as a matter of law.

If the state makes its showing of these elements, the burden

---

[10]*Strahan v. Blackburn,* 750 F.2d 438, 440 (5th Cir.), *cert. denied,* 471 U.S. 1138, 105 S.Ct. 2683, 86 L.Ed.2d 700 (1985).

[11]*McDonnell v. Estelle,* 666 F.2d 246, 251 (5th Cir.1982); *see also Hannon v. Maschner,* 845 F.2d 1553, 1557 (10th Cir.1988) and cases collected therein.

[12]*McDonnell,* 666 F.2d at 253.

[13]*Id.* at 251.

[14]*Vasquez v. Hillery,* 474 U.S. 254, 264-65, 106 S.Ct. 617, 623-24, 88 L.Ed.2d 598 (1986);  17A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4268.2 (2d ed. 1988) (first edition quoted with approval in *Strahan,* 750 F.2d at 441).

of going forward shifts to the petitioner to show either (1) that the state actually is not prejudiced, or (2) that the petitioner's delay is "based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred".[15]

*A. Prejudice*

Walters's petition alleges that he received ineffective assistance of counsel because Parks never perfected Walters's appeal and never properly withdrew from the case. Walters also charges that he was denied effective assistance of counsel when the trial court refused to appoint counsel to represent him on appeal.

The state must make a particularized showing of how the delay has prejudiced its ability to defend against those allegations. The state relies chiefly for its allegation of prejudice on Parks's inability to find his main case file or to remember why the records do not reflect a timely notice of appeal, and on the death of the court reporter and the unavailability of the statement of facts from Walters's plea colloquy and sentencing.[16] The state also contends that ambiguity in the record supports its allegation of prejudice.

The state relies on Parks's affidavit submitted in the state habeas proceeding to support its assertion that it has been

---

[15]*McDonnell,* 666 F.2d at 251 (quoting Rule 9(a)).

[16]The state's counsel at oral argument downplayed the importance of the court reporter's death. The state's original brief, however, relies squarely on the death of the court reporter as a source of prejudice to the state.

7

prejudiced because, the state contends, Parks has no recollection of the circumstances of Walters's case. In that affidavit, Parks stated that "[a]fter a diligent search, [he] has been unable to locate his main file after the passage of time"; that it was his "custom and practice to give oral notice of appeal, in open court, immediately after the pronouncement of sentence"; that he "has no reason to believe that his custom and practice was different in this case, particularly in light of his letter to [Walters] of December 16, 1978"; and that he "has no knowledge or recollection of any circumstances surrounding the failure of the records [in the state court] failing to reflect timely notice of appeal". Parks's affidavit does not state unequivocally that he has no recollection of any of the circumstances surrounding Walters's case. Therefore, the affidavit, standing alone, is insufficient to establish that the state has been prejudiced by Parks's lack of recollection. On remand, the state will have the opportunity to call Parks to testify at the evidentiary hearing and may, at that time, seek to establish prejudice on this basis.

We turn next to the state's allegations concerning the court reporter's death and unavailability of records. Our focus is on the facts surrounding Walters's sentencing. Walters has put substantial evidence in the record suggesting that, immediately after his sentencing, he wanted to appeal and said so. This evidence includes (1) Walters's apparent refusal to sign a waiver of appeal; (2) Walters's letter to Parks asking about the status of his appeal; (3) Parks's reply stating that he had given a

8

notice of appeal; (4) Walters's letter to the state court inquiring about an appeal; and (5) Parks's affidavit recalling that it was his general practice to give oral notices of appeal in cases like Walters's. From the record, it is clear that Walters intended to appeal, and there is substantial, though conflicting, evidence that Parks intended to appeal as well.[17] The state challenges none of this evidence, but instead hypothesizes that Walters might have waived his right to an appeal at sentencing. We cannot find that the state was prejudiced by the absence of the court reporter's records from the sentencing, considering the substantial evidence introduced by Walters that he did not contemplate waiving his appeal.

Assuming for the moment that the death of the court reporter and unavailability of records is a *possible* source of prejudice to the state, we must hold that factor legally insufficient because the state has not proved that it was actually prejudiced. If the state wishes to establish prejudice from the death of the court reporter and the unavailability of the court reporter's records, it must also establish that the substance of those records is

---

[17]Parks's signing of the waiver of appeal may suggest that he did not contemplate an appeal in Walters's case. We have already noted that the waiver was ineffective because it was not signed by Walters or by the state judge. The waiver is further undercut by Parks's affidavit to the state habeas court, in which he recalls that his usual practice was to give oral notice of appeal, and by Parks's letter to Walters of December 16, 1978, in which he states that "notice of appeal was given" in Walters's case in open court.

unavailable from other sources.[18]  This the state has not done.  The state has not shown in its brief, and was unprepared at oral argument to discuss, whether the original trial judge, prosecuting attorney, or other participants were still alive and could testify to the contents of Walters's sentencing colloquy.[19]  Further, the state does not dispute that the most important participants at the sentencing for purposes of Walters's challenge, Parks and Walters, are alive and available to testify.[20]  On these facts, we are unable to conclude that the state has in any way been prejudiced by the death of the court reporter.

*B. Causation*

We see insufficient evidence of causation in the facts the state calls to our attention.  Assuming *arguendo* that the death of the court reporter and unavailability of records is construed as

---

[18]In *McDonnell* the state presented the death of the trial judge as a factor establishing prejudice.  In reversing the district court's Rule 9(a) dismissal, we stated that "prejudice resulting from the judge's death occurs *only if there are no other sources* from which the state can obtain the requisite information to counter the petitioner's claim".  *McDonnell,* 666 F.2d at 253 (emphasis added).

[19]In response to a question at oral argument concerning whether any of the participants in Walters's 1978 sentencing were still alive, the state's attorney dodged the issue by stating that he did not want to go outside the record in his arguments. Those matters are "outside" the record, however, only because the state has failed to shoulder its burden to include them.  The absence of these matters from the record supports Walters's position, not the state's.

[20]*See Hannon,* 845 F.2d at 1556, rejecting a Rule 9(a) dismissal of a habeas petition charging ineffective assistance of counsel on grounds identical to those Walters raises because "[b]oth [the petitioner] and his former attorney are available to testify".

prejudicial to the state, the state bears the further burden of proving that Walters's delay in filing his habeas petition caused those sources of evidence to be lost. At a minimum, this requires the state to establish that if Walters had filed his habeas petition at some earlier time, the evidence the state says it has lost would have been available.[21] The state has made no attempt to do so. Nowhere in the record do we find, for example, the date the court reporter died or the date the reporter's records became unavailable. The court reporter may have died the day after Walters's trial concluded, in which case the reporter's unavailability would certainly not be attributable to Walters's delay in bringing his habeas petition. We simply do not have the necessary facts before us.[22] Because of the state's burden to prove those facts, their absence compels the conclusion that the necessary foundation for a Rule 9(a) dismissal has not been laid.

*C. Unreasonableness of the Delay*

On the facts before us, we cannot conclude that the delay between Walters's sentencing and his first habeas petition was unreasonable. This is not a case in which the defendant "sat on" known rights for nine years. Rather, it is a case in which the defendant attempted to assert his rights immediately, only to be blocked by the actions of his appointed counsel in unlawfully

---

[21]*Lawrence v. Jones,* 837 F.2d 1572, 1575 (11th Cir.1988).

[22]"The district court needs to determine when the prejudicial deaths occurred and any other circumstances that would show that [the state] would have been in a position to show the facts surrounding [the defendant's] conviction had he only brought his claim earlier". *Id.* at 1575 (footnote omitted).

11

abandoning him, then blocked again when the state trial court denied his appeal as untimely. What the Tenth Circuit said in *Hannon v. Maschner* is applicable in this case:

> One factor presumably relevant in this case is that Hannon attempted to file an out-of-time appeal and to have the alleged trial errors addressed through post-conviction procedures shortly after his incarceration and on numerous subsequent occasions. *Cf. Louis v. Blackburn,* 630 F.2d 1105, 1110 (5th Cir.1980) (recognizing importance of petitioner's previous efforts to attain relief in determining whether he displayed due diligence). *Each time the state court could have cured the due process violation alleged here by providing the equivalent of direct appellate review of the merits of his claims.... Each time the state court refused.*[23]

In sum, we find that the state's showing on each of the three required elements is insufficient to sustain a summary dismissal under Rule 9(a).

### III.

The state offers us an alternative basis on which to uphold the district court's judgment: Walters failed to comply with a state procedural rule requiring that notices of appeal be filed within ten days of the judgment. We reject this argument because it is clear that the state habeas court did not deny relief "*because of* the defendant's violation of state procedural requirements".[24] There is no plain statement in the state habeas court's opinion that a state procedural default was used as an

---

[23]845 F.2d at 1557-58 (emphasis added) (also citing *Evitts v. Lucey,* 469 U.S. 387, 399-400, 105 S.Ct. 830, 837-838, 83 L.Ed.2d 821 *reh'g denied,* 470 U.S. 1065, 105 S.Ct. 1783, 84 L.Ed.2d 841 (1985)).

[24]*Shaw v. Collins,* 5 F.3d 128, 131 (5th Cir.1993).

12

independent basis for the state court's disposition of the case.[25]

## IV.

Our conclusion is narrow.  We do not hold that Walters received ineffective assistance of counsel.  We hold only that the state's allegations of prejudice are insufficient to support the district court's summary dismissal of this petition under Rule 9(a) of the Section 2254 Rules.  On remand, the state will have another opportunity to prove that it has been prejudiced, just as a litigant whose summary judgment is denied may still prove his or her case on the merits.[26]  Any further attempt by the state to show prejudice, however, must be based on new evidence in addition to that in the record before this Court;  the state may not simply

---

[25]*See Harris v. Reed,* 489 U.S. 255, 261-62, 109 S.Ct. 1038, 1042-43, 103 L.Ed.2d 308 (1989).  Because the state court's decision fairly appears to rest at least in part on federal law, it must include a *Harris* "plain statement" to bar federal review. *See Coleman v. Thompson,* 501 U.S. 722, ---- - ----, 111 S.Ct. 2546, 2556-57, 115 L.Ed.2d 640, 658-59, *reh'g denied,* --- U.S. ----, 112 S.Ct. 27, 115 L.Ed.2d 1109 (1991);  *Young v. Herring,* 938 F.2d 543 (5th Cir.1991) (en banc), *cert. denied,* --- U.S. ----, 112 S.Ct. 1485, 117 L.Ed.2d 627 (1992).

[26]The state's failure to make a sufficient showing of prejudice to support a summary Rule 9(a) dismissal does not mean that the state cannot possibly prove prejudice, as we noted in *McDonnell v. Estelle:*

> In reversing the trial court's judgment on the 9(a) motion, we do not imply that the events claimed as prejudicial by the state could not prove prejudice. And we certainly make no predictions as to the conclusion a court might reach on the merits of McDonnell's claim, should the state ultimately fail to prove its 9(a) defense.  We hold only that the evidence submitted to show prejudice does not justify the finding of prejudice by the district court in its summary judgment.

*McDonnell,* 666 F.2d at 252.

13

relitigate this appeal in the district court.

We REVERSE the district court's judgment and REMAND this case to the district court.[27]

---

[27]*See Jackson v. Estelle,* 570 F.2d 546, 547 (5th Cir.1978).