

## NUMBER 13-08-00583-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

THE STATE OF TEXAS, **Appellant,**

**v.**

VICTOR VILLARREAL, **Appellee.**

### On appeal from the 93rd District Court of Hidalgo County, Texas.

## MEMORANDUM OPINION

### Before Justices Yañez, Garza, and Benavides Memorandum Opinion by Justice Yañez

Pursuant to a plea agreement with the State, appellee, Victor Villarreal, pleaded guilty to possession of marihuana in an amount of more than four ounces but less than five pounds on June 20, 1991.[1]  On September 4, 2008, the trial court granted Villarreal's application for post-conviction writ of habeas corpus.  By three issues, appellant, the State,

---

[1] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(4) (Vernon 2010).

contends that the trial court abused its discretion by granting Villarreal's writ.[2]  We affirm.

## I. BACKGROUND

Villarreal was charged with possession of marihuana in an amount of more than four ounces but less than five pounds on March 28, 1991.  Pursuant to a plea agreement with the State, Villarreal pleaded guilty to the charge, and the trial court deferred adjudication and placed Villarreal on probation for a term of ten years.  The trial court granted the State's motion for early termination of Villarreal's probation on September 28, 1993.

In 2008, Villarreal filed an application for post-conviction writ of habeas corpus alleging that he did not enter his plea of guilty to the 1991 charge knowingly or voluntarily and that he did not "fully understand the consequences of his plea" because the trial court failed to properly admonish him pursuant to Article 26.13 of the Texas Code of Criminal Procedure.  Specifically, Villarreal claimed that the trial court failed to inform him that a plea of guilty or nolo contendere may result in deportation."[3]  In its response, the State generally denied Villarreal's allegations and asserted that the doctrine of laches barred habeas corpus relief.  Specifically, the State argued that it had been "seriously prejudiced by the seventeen (17) year delay between the occurrence of the alleged error and [Villarreal's] complaint" and that Villarreal's "lengthy delay in complaining about the voluntariness of his plea seriously affect[ed] the credibility of his complaint."

The trial court held a hearing on Villarreal's application for post-conviction writ of habeas corpus relief on June 19, 2008.  At this hearing, the State argued that it was prejudiced because it could not respond to the issue of whether Villarreal had been

---

[2] Villarreal did not file a brief in this case; thus, we are without the benefit of any argument on his behalf.

[3] *See* TEX. CODE CRIM. PROC. ANN. art. 26.13 (Vernon Supp. 2009).

2

properly admonished without a record of the 1991 proceedings. The State also argued that Villarreal's harm did not result from the trial court's alleged failure to admonish him regarding the possible immigration consequences.

Villarreal then filed a motion to reopen the case, informing the trial court that the Honorable Fernando Mancias, the judge who sentenced Villarreal to deferred adjudication probation, could provide testimony to assist it in reaching a decision. The trial court held a second hearing on September 4, 2008, allowing Judge Mancias's testimony.

Judge Mancias testified that he was a presiding judge of the Ninety-third District Court in Hidalgo County from January 1, 1989 until December 31, 2000. Villarreal asked Judge Mancias to review a document entitled "Admonitions of the Court to the Defendant Prior to the Granting of Deferred Adjudication Probation." Judge Mancias stated that although his signature appeared on the form, Villarreal's and his attorney's signatures were missing; however, Judge Mancias stated that he believed that at the time of Villarreal's plea, the signatures were not required. Villarreal asked Judge Mancias if the admonitions included an instruction that if Villarreal was a resident alien or not a citizen of the United States, a plea of guilty would affect his immigration status. Judge Mancias replied that the admonitions on the document did not include such a warning. Villarreal asked Judge Mancias if the admonitions of article 26.13 were required to be made either orally or in writing, and Judge Mancias responded that those admonition requirements "came into effect sometime in the mid[-]1980s, but they began to really be enforced like in 1995 or 1996. . . . In terms of us making sure that we admonished the defendants if they were not U.S. citizens of the immigration consequences." Judge Mancias then testified that it was "very highly improbable" that he would have admonished "anyone about the consequences of a plea if they were not U.S. citizens" from 1991 "up until about 1994." Judge Mancias

3

explained that at that time, "[i]t was improbable [he] would ask [the defendants] if they were U.S. citizens and also very highly improbable that [he] would admonish [the defendants] that a guilty plea could possibly result in adverse immigration consequences." Then Judge Mancias stated that he remembered Villarreal's particular case because Villarreal was "involved with horses" and that Villarreal's attorney at the time stated that Villarreal was asking for deferred adjudication "so he wouldn't be deported to Mexico." According to Judge Mancias, "back in the late '80s and early '90s, a non-U.S. citizen that was given deferred adjudication was almost like a guarantee that he would not be deported." Judge Mancias stated that it became more important for him to admonish a defendant who was not a U.S. citizen of the consequences of a guilty plea in "'95 or '96."

On cross-examination by the State, Judge Mancias agreed that article 26.13 of the code of criminal procedure requiring an admonishment about possible immigration consequences "went into effect in 1985" and that Villarreal pleaded guilty six years later. Judge Mancias insisted that it was "highly improbable" that he would have admonished Villarreal on any immigration consequences even though such an admonishment was required by law. The State then asked Judge Mancias if he was aware that in 1991, "the Fifth Circuit held that deferred at that time was not a conviction" and that "[i]t was only later when they passed something called Illegal Immigration Reform and Immigrant Responsibility Act effective April 1997 that they said that that would be considered a conviction and get you into immigration problems." Judge Mancias agreed. However, Judge Mancias stated that he did not know whether there would have been a different outcome if he had properly admonished Villarreal concerning the consequences of his plea.

The trial court granted Villarreal's writ, stating that "Judge Mancias'[s] testimony is

4

clear. The law was that he should have told him and he didn't tell him." The trial court set aside Villarreal's conviction in the underlying criminal case and entered an order granting Villarreal's application for post-conviction writ of habeas corpus. After the State filed a motion requesting that the trial court make the statutorily required findings of fact and conclusions of law supporting its ruling,[4] the trial court did so.

The trial court made the following findings of fact:

6)   The trial court accepted and entered as evidence, without objection, the business records of attorney, Clyde M. Taylor, Jr., which included the affidavit of the Applicant [Villarreal].

7)   The Trial Court found that the transcription of the plea colloquy was not found and thus unavailable for review.

8)   [Villarreal's] attorney of Record at the time the plea was taken was the Honorable Joe Chapa.

9)   The Presiding Judge at the time that the plea was taken was the Honorable Judge Fernando Mancias.

10)  The affidavit of [Villarreal], admitted as evidence without objection, stated that "[n]either [t]he (Honorable Joe Chapa) nor the judge (Honorable Judge Fernando Mancias) ever told me that because I was a resident alien this probation would affect my immigration status in the United States."

11)  No plea documents demonstrating that the plea admonishments were given to [Villarreal] or that bore [Villarreal's] signature, were presented by either the State or [Villarreal].

12)  An [sic] document titled "Admonitions of the Court to the Defendant Prior to the Granting of Deferred Adjudication Probation" was presented by [Villarreal] without the signature of either [Villarreal] or [Villarreal's] attorney of record at the time of the plea[,] the Honorable Joe Chapa.

13)  Testimony adduced regarding the above "Admonitions of the Court" from the Honorable Judge Fernando Mancias was that it was unlikely

---

[4] *See* TEX. CODE CRIM. PROC. ANN. art. 11.072, § 7(a) (Vernon 2005) (stating that "the court shall enter a written order including findings of fact and conclusions of law").

that the admonitions "regarding immigration consequences" were given to [Villarreal] at the time of the plea.

14) "Admonitions of the Court to the Defendant Prior to the Granting of Deferred Adjudication Probation" contains no admonition regarding the "immigration consequences of the plea."

The trial court entered the following conclusions of law:

15) Before accepting a guilty plea, the trial judge must admonish the defendant of the range of punishment, as well as the plea's potential affect [sic] on the defendant's citizenship. Tex. Code Crim. Proc. Ann. art. 26.13(a)(4) (Vernon 1989).

16) If a plea is not entered knowingly and voluntarily, it has been obtained in violation of due process and is void. *McCarthy v. United States*, 394 U.S. 459, 466 (1969).

17) In considering whether a plea is voluntary[,] the trial court must examine the record as a whole. *Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998); *see Boykin*, 395 U.S. at 242; *Aguirre-Mata v. State*, 125 S.W.3d 473, 474 (Tex. Crim. App. 2003).

18) The trial court must determine whether a defendant entered a voluntary guilty plea, and must consider whether the record shows that the trial court admonished the defendant as required; if so, the admonishments are prima facie evidence that the defendant's guilty plea was knowing and voluntary. *See Fuentes v. State*, 688 S.W.2d 542, 544 (Tex. Crim. App. 1985); *Courtney v. State*, 39 S.W.3d 732, 736 (Tex. App.–Beaumont 2001, no pet.).

19) If duly admonished, the defendant must show he entered his plea without understanding the consequences and suffered harm from doing so. *See Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998).

20) Waiver of a constitutional right which is not voluntary or is made without knowledge of the consequences violates due process. *Boykin v. Alabama*, 395 U.S. 238, 242-43, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

21) These constitutional errors are reviewed under the standard set out in Rule of Appellate Procedure 44.2(a). Where the defendant complains only of the failure to follow the dictates of the statute, we must apply Rule 44.2(b) and determine if the error affects a substantial right. *Aguirre-Mata v. State*, 992 S.W.2d 495, 499 (Tex.

6

Crim. App. 1999).

Finally, the trial court applied the law to its findings, stating the following:

22) The Applicant [Villarreal] was not admonished, in writing, as the plea's potential affect [sic] on the defendant's citizenship.

23) It appears from the record available, testimony of witnesses, testimony by affidavit of [Villarreal] that no oral admonitions were given to [Villarreal] regarding the plea's potential affect [sic] on [Villarreal's] citizenship.

24) The failure to admonish [Villarreal] at the time of sentencing affected and currently affects [Villarreal's] substantial rights.

25) The evidence before this Court establishes by a preponderance of the evidence that the Applicant Victor Villarreal's plea was not "knowingly and voluntarily" entered, has been obtained in violation of due process and is void.

This appeal ensued.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

The applicant seeking relief bears the burden of proof in a habeas corpus hearing.[5] To prevail on a writ of habeas corpus, the applicant must prove his allegations by a preponderance of the evidence.[6] The court of criminal appeals has held that a party collaterally attacking a judgment of conviction on the ground that he was not admonished pursuant to 26.13(a)(4) must show that no admonishment was given and that the lack of the admonishment affected his decision to plead guilty.[7]

In reviewing a trial court's decision on an application for writ of habeas corpus, we review the facts in the light most favorable to the trial court's ruling, and we will uphold the

---

[5] *Ex parte Garza*, 192 S.W.3d 658, 660 (Tex. App.–Corpus Christi 2006, no pet.).

[6] *Ex parte Thomas*, 906 S.W.2d 22, 24 (Tex. Crim. App. 1995) (en banc).

[7] *Ex parte Tovar*, 901 S.W.2d 484, 486 (Tex. Crim. App. 1994) (en banc).

trial court's ruling absent an abuse of discretion.[8] Although we afford almost total deference to the trial court's determination of the historical facts, those facts must be supported by the record.[9] "If the resolution of the ultimate questions turns on an application of legal standards, we review the determination de novo."[10]

Article 26.13 of the code of criminal procedure requires that prior to a defendant's plea of guilty or nolo contendere, a trial court must provide certain admonitions, including among other things, a warning that if the defendant "is not a citizen of the United States of America, a plea of guilty or nolo contendere for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law."[11] The trial court may admonish the defendant either in writing or orally and substantial compliance with article 26.13 is sufficient.[12] However, "[t]o claim that an admonishment was in substantial compliance even though it was never given is a legal fiction."[13]

Although article 26.13 is designed to protect a defendant's constitutional rights when pleading guilty or nolo contendere, "the admonitions . . . are not themselves constitutionally required."[14] Therefore, the court of criminal appeals has found that the failure to provide

[8] *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006).

[9] *Ex parte Garza*, 192 S.W.3d at 661.

[10] *Id.*

[11] TEX. CODE CRIM. PROC. ANN. art. 26.13(a)(4); *VanNortrick v. State*, 227 S.W.3d 706, 707-08 (Tex. Crim. App. 2007).

[12] TEX. CODE CRIM. PROC. ANN. art. 26.13(c), (d); *VanNortrick*, 227 S.W.3d at 708.

[13] *VanNortrick*, 227 S.W.3d at 708 (quoting *Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997) (internal quotations omitted)).

[14] *Id.*

the required admonition regarding the immigration consequences of a plea is a non-constitutional error.[15] "This non-constitutional violation of Article 26.13 is subject to a harm analysis under Rule of Appellate Procedure 44.2(b), for those errors other than constitutional error. 'Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.' If the error affected substantial rights, then, it is not harmless."[16]

"The critical question is, '[C]onsidering the record as a whole, do we have a fair assurance that the defendant's decision to plead guilty would not have changed had the court admonished him?'"[17] Our "fair assurance" determination involves three issues: "whether the appellant knew the consequences of his plea; the strength of the evidence of the appellant's guilt, and the appellant's citizenship and immigration status."[18] Neither party has the burden of proving harm or harmlessness resulting from the error.[19] Furthermore, "when the trial court fails to admonish a defendant about the immigration consequences of his guilty plea, a silent record on citizenship, or a record . . . that is insufficient to determine citizenship, establishes harm by the standard of Rule 44.2(b)."[20]

### III. HARM ANALYSIS

By its first issue, the State contends that the trial court abused its discretion because Villarreal failed to show that he was harmed. The State asserts that Villarreal cannot show

---

[15] *Id.*

[16] *Id.*

[17] *Id.* at 709 (quoting *Anderson v. State*, 182 S.W.3d 914, 919 (Tex. Crim. App. 2006)).

[18] *Id.* at 712.

[19] *Id.* at 709.

[20] *Id.* at 714.

that he was harmed because Villarreal did not actually "face adverse immigration consequences in 1991 from his deferred adjudication plea." The State does not challenge the trial court's findings that Villarreal was not admonished, in writing or orally regarding the plea's potential effect on his citizenship, and it does not dispute that Villarreal is not a United States citizen. Furthermore, the State does not challenge the trial court's conclusions that Villarreal's plea was not knowingly and voluntarily entered, was obtained in violation of due process, and is void.

The State first argues that Villarreal cannot show harm because at the time of his guilty plea, a deferred adjudication was not a final conviction for immigration purposes; therefore, had the trial court admonished Villarreal of the immigration consequences as they existed at the time, Villarreal would not have changed his plea.[21] However, the State did not specifically make that complaint to the trial court.[22] Instead, the State only objected to Villarreal's application for habeas corpus relief on the basis that it was barred by the doctrine of laches.[23] The State's argument on appeal does not comport with its argument to the trial court; therefore, it has not preserved its argument for our review.[24] The State

---

[21] We note that at the time Villarreal pleaded guilty, trial courts were required pursuant to article 26.13 to make the proper admonition regarding the immigration consequences of a guilty plea. *See* Act of June 14, 1985, 69th Leg., R.S., ch. 671, § 1, 1985 TEX. GEN. LAWS 2443, 2444 (providing that the trial court shall admonish a defendant pleading guilty of "the fact that if the defendant is not a citizen of the United States of America, a plea of guilty or nolo contendere for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law.").

[22] *See* TEX. R. APP. P. 33.1.

[23] When asked if he agreed "that the law in 1991 was that deferred wasn't going to get you deported," Judge Mancias replied, "I think the law was that in 1991, deferred adjudication was not a conviction for immigration purposes."

[24] *See* TEX. R. APP. P. 33.1(a)(1)(A); *Swain v. State*, 181 S.W.3d 359, 367 (Tex. Crim. App. 2005) (en banc) (concluding that because the appellant's trial objection did not comport with the issue raised on appeal, he failed to preserve his complaint for appellate review); *McNairy v. State*, 835 S.W.2d 101, 107-08 (Tex. Crim. App. 1991) (en banc) (concluding that the appellant did not preserve his issue for appellate review because the claims presented did not comport with the arguments and objections made at pretrial); *see also* *VanNortrick*, 227 S.W.3d at 712, 714 (rejecting the State's argument that the appellant was not harmed

10

also argues on appeal that the trial court had no duty to admonish Villarreal of possible deportation because it is a collateral consequence of a guilty plea. However, because the State's argument on appeal does not comport with its arguments to the trial court, it has failed to preserve this error as well.[25] Moreover, the court of criminal appeals has held that a party is entitled to habeas corpus relief for the trial court's failure to admonish him regarding the immigration consequences of his plea.[26]

Next, the State argues that "there was no requirement to admonish [Villarreal] of the possible use of his present conviction for enhancement in a subsequent offense, there was no error wrought by the [deferred adjudication] trial court." This argument has no merit because the trial court found that error existed because Villarreal was not admonished regarding the immigration consequences of his plea. Moreover, the trial court did not find that there was error because Villarreal was not admonished concerning the enhancement consequences of his guilty plea.

---

because a prior felony conviction would have affected his immigration status, and therefore, "[t]he conviction in the present case . . . would have had no impact on his immigration status, nor in turn, on his decision to plead guilty").

[25] *See* TEX. R. APP. P. 33.1(a)(1)(A); *Swain*, 181 S.W.3d at 367. We note that the State relies on *State v. Jimenez* to support its argument on appeal. *See*, 987 S.W.2d 886, 888-89 (Tex. Crim. App. 1999) (en banc). However, in *Jimenez,* the court of criminal appeals "held that admonishments as to deportation consequences must be given on felony offenses, but not on misdemeanors." *Hatten v. State*, 71 S.W.3d 332, 335 (Tex. Crim. App. 2002) (citing *Jimenez*, 987 S.W.2d at 886) (Johnson, J., concurring). Here, Villarreal pleaded guilty to a felony, so the trial court was statutorily required to provide the proper admonitions. *See* TEX. CODE CRIM. PROC. ANN. art. 26.13(a)(4).

[26] *See Ex parte Tovar*, 901 S.W.2d at 486; *see also VanNortrick*, 227 S.W.3d at 714 (concluding that the trial court's error in not admonishing the defendant of the immigration consequences of a guilty plea was not harmless); *Ex parte McCain*, 67 S.W.3d 204, 209 n.14 (Tex. Crim. App. 2002) (citing *Ex parte Tovar*, 901 S.W.2d at 485, the court of criminal appeals noted that "failure to give mandatory admonishments regarding deportation required under Art. 26.13(a)(4) is cognizable on writ of habeas corpus only if trial judge wholly failed to give warnings and defendant's plea was constitutionally involuntary as a consequence"); *Valdez v. State*, 82 S.W.3d 784, 787 (Tex. App.–Corpus Christi 2002, no pet.) ("A habeas corpus applicant seeking relief from the failure to receive an admonishment concerning the immigration consequences must establish there was no admonishment given consistent with article 26.13(a)(4) of the code of criminal procedure or otherwise suggesting the possibility of deportation, and that the lack of such admonishment affected his decision to enter a plea of no contest.") (citing *Ex parte Tovar*, 901 S.W.2d at 486).

In this case, the trial court found that Villarreal did not know the consequences of his plea. This finding is supported by the record because Villarreal stated in his affidavit that he was not told that his immigration status would be affected by his guilty plea, Judge Mancias testified that he did not provide the required admonition, and the written admonishments do not contain a warning of the possible immigration consequences of Villarreal's guilty plea.[27] The State argues that there is ample evidence from which it can be inferred that Villarreal was aware of the consequences of his plea. Specifically, the State points to evidence that Villarreal wanted deferred adjudication so that he would not be deported and that at the time of Villarreal's guilty plea, deferred adjudication was not a final conviction for immigration purposes. However, this evidence also supports a conclusion that had the trial court warned Villarreal, as required by the Legislature in 1991, that a guilty plea could result in deportation or being forever denied the opportunity of becoming a naturalized citizen, he would not have pleaded guilty. Furthermore, the record in this case does not contain a reference to the information the admonishment would have provided.[28] In fact, Judge Mancias testified that it was "highly improbable" that he gave Villarreal the admonition concerning the immigration consequences of his guilty plea. Therefore, because the record supports the trial court's finding that Villarreal did not know the consequences of his plea, we must defer to its determination.[29]

[27] *See Fakeye v. State*, 227 S.W.3d 714, 717 n.4 (Tex. Crim. App. 2007) ("A record that is completely silent as to the consequences of a guilty plea supports the inference that the appellant was unaware of the consequences.").

[28] *See id.* ("However, if the record contains reference to the information the admonishment would have provided, the record is not completely silent and may not support the inference that he was unaware of the consequences.").

[29] *See Ex parte Harrington*, 310 S.W.3d 452, 457 (Tex. Crim. App. 2010) ("The trial judge is the original factfinder in habeas corpus proceedings. Although this Court is the ultimate factfinder, 'in most circumstances, we will defer to and accept a trial judge's findings of fact and conclusions of law when they are supported by the record.' We similarly defer to any implied findings and conclusions supported by the

12

In *VanNortrick*, the appellant pleaded guilty; however, the trial court failed to admonish the appellant regarding the immigration consequences of a guilty plea.[30] After the court of criminal appeals stated that although there was strong evidence presented of the appellant's guilt, it concluded that when a defendant is not a United States citizen, there is no way to know whether the defendant would have changed his guilty plea had he known he faced the possibility of deportation and being forever denied the opportunity of becoming a naturalized citizen.[31] The court concluded that regardless of the strength of the evidence of guilt, it had no "fair assurance that the appellant in that case would not have changed his guilty plea had he been properly admonished."[32]

Here, as in *VanNortrick* there is no way to know whether Villarreal would have changed his guilty plea had he known he faced the possibility of deportation and being forever denied the opportunity of becoming a naturalized citizen, and we cannot infer that he would not have changed his plea.[33] Furthermore, Villarreal stated in his affidavit that he would have changed his plea. Therefore, viewing the facts in the light most favorable

---

record.") (citations omitted).

[30] *VanNortrick*, 227 S.W.3d at 708.

[31] *VanNortrick*, 227 S.W.3d at 713 ("In this situation, the strength or weakness of the evidence against the appellant makes little difference to the harm analysis in the context of the whole record.").

[32] *Id.* We note that the court in *VanNortrick* conducted its harm analysis in the context of a direct appeal. However, we conclude that the same reasoning applies equally in a habeas corpus proceeding. *See Ex parte Acosta*, No. WR-69,780-01, 2008 Tex. Crim. App. Unpub. LEXIS 357, at **2-3 (Tex. Crim. App. May 14, 2008) (per curiam) (citing *VanNortrick* for the proposition that an applicant who had not been orally admonished of the deportation consequences of his plea "alleged facts that, if true, might entitle him to relief").

[33] *See id.* at 714 (explaining that the reasoning in *Matchett v. State*, 941 S.W.2d 922, 929 n.9 (Tex. Crim. App. 1996) "still holds true" that if a defendant was in fact deportable, it would be impossible to determine the effects of the trial court's error, and a presumption of harm would be almost irrebuttable); *see also Reed v. State*, Nos. PD-0590-06 & PD-0591-06, 2007 Tex. Crim. App. Unpub. LEXIS 399, at *10 (Tex. Crim. App. Oct. 10, 2007) (explaining that in *VanNortrick*, it "held that if the record did not show that the defendant were a citizen of the United States, the failure to admonish him on the immigration consequences of conviction could not be held harmless").

to the trial court's ruling, we conclude that the trial court did not abuse its discretion in determining that the lack of the admonishment affected Villarreal's decision to plead guilty and that his substantial rights were violated.[34]  We overrule the State's first issue.

## IV. LACHES

By its second issue, the State contends that the trial court abused its discretion in granting habeas corpus relief to Villarreal because the "equitable doctrine of laches estops [Villarreal's] claim."  The State argues that it has been gravely prejudiced in its ability to respond to Villarreal's allegations because the reporter's record is unattainable,[35] certain court files are incomplete, portions of the original judgment are missing, and the State's attorney who handled the case no longer works at the District Attorney's Office.  The State also argues that appellant was placed on notice in 1997 of the consequences of his guilty plea when deferred adjudication became a conviction for purposes of immigration and that he should have filed his writ then.

The court of criminal appeals has held that the equitable doctrine of laches should be employed in a determination of whether to grant habeas corpus relief.[36]

> The doctrine of laches is based upon the maxim that equity aids the vigilant and not those who slumber on their rights.  It is defined as neglect to assert right or claim which, taken together with lapse of time and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity.  Also, it is the neglect for an unreasonable and unexplained length of time under circumstances permitting diligence, to do what in law,

---

[34] *Ex parte Tovar*, 901 S.W.2d at 486.

[35] The State notes that there is a fifteen year retention requirement for reporter's records by the court clerk.  *See* TEX. R. APP. P. 13.6 (providing that "the trial court clerk need not retain the [court reporter's] notes beyond 15 years of their filing date").

[36] *Ex parte Carrio*, 992 S.W.2d 486, 488 (Tex. Crim. App. 1999) (approving the federal rules pertaining to laches in assessing the consequences of delay in applications for writ of habeas corpus and adopting the elements as set out by the Fifth Circuit that the State must prove to support a claim of laches) (citing *Walters v. Scott*, 21 F.3d 683, 686-87 (5th Cir. 1994)).

14

should have been done.[37]

To prevail on a theory of laches, the State must make a particularized showing of prejudice.[38] "The type of prejudice the State must show is prejudice in its ability to respond to the allegations in the petition."[39]

The State first argues that it was not able to respond to Villarreal's allegations due to the passage of time. However, "[t]he doctrine of laches concerns prejudice, not mere passage of time"[40] and "the length of delay alone will not constitute either unreasonableness of delay or prejudice."[41] Therefore, the trial court did not abuse its discretion in concluding that Villarreal's claim was not barred by laches due to the passage of time.

Next, the State argues that it was prejudiced because it was unable to obtain the reporter's record of Villarreal's plea hearing. We disagree. To rely on the absence of the reporter's record, the State must show that the substance of the record is unavailable from other sources.[42] In this case, Judge Mancias, the judge who accepted Villarreal's guilty

---

[37] *Id.* at 487 n.2 (internal quotations omitted).

[38] *Id.* at 488.

[39] *Id.*

[40] *Id.* at 488 n.3.

[41] *Id.* at 488.

[42] *Walters*, 21 F.3d at 688 ("Assuming for the moment that the death of the court reporter and unavailability of records is a possible source of prejudice to the state, we must hold that factor legally insufficient because the state has not proved that it was actually prejudiced. If the state wishes to establish prejudice from the death of the court reporter and the unavailability of the court reporter's records, it must also establish that the substance of those records is unavailable from other sources."); *McDonnell v. Estelle*, 666 F.2d 246, 253 (5th Cir. 1982) ("Prejudice resulting from the judge's death occurs only if there are no other sources from which the state can obtain the requisite information to counter the petitioner's claim."); *see also Ex parte Rodriguez*, No. 2-07-079-CV, 2008 Tex. App. LEXIS 4602, at **9-12 (Tex. App.–Fort Worth June 19, 2008, pet. denied) (mem. op.) ("The State has not shown that the information regarding the admonishments, presumably on the trial record, could not have been reproduced from other sources. Because the State has not made a particularized showing of prejudice, and in the case of the judge's alleged memory problems that

15

plea, testified, and the State did not present any evidence that the prosecuting attorney or the court reporter were unavailable to testify at the habeas corpus proceeding.[43] We conclude that the State did not show that the substance of the record was unavailable from other sources. Therefore, because the State did not make a particularized showing of prejudice, the trial court did not abuse its discretion in finding that Villarreal's claim was not barred due to laches. We overrule the State's second issue.

## V. DIRECT APPEAL

By its third issue, the State generally contends that the trial court "improperly" granted Villarreal's writ for habeas corpus because Villarreal should have raised his issue on direct appeal. Specifically, the State argues, without citation to any appropriate authority, that Villarreal "should have appealed directly, and not waited over seventeen years to collaterally attack his plea."

Although the State claims that a party may only attack a guilty plea due to the failure to admonish pursuant to article 26.13 in a direct appeal, there is authority supporting a conclusion that Villarreal could collaterally attack the judgment in the underlying case through the habeas corpus process. In *Ex parte Tovar*, the court of criminal appeals concluded that habeas corpus relief is available to an applicant that was not properly admonished pursuant to article 26.13 if the applicant shows that no admonition was given

---

Rodriguez's delay caused the prejudice, we reject its argument that habeas corpus relief is barred by laches and move on to the merits of Rodriguez's appeal.").

[43] We note that on appeal, the State asserts that the State's attorney who "handled the underlying case is no longer with the District Attorney's Office"; however, it did not provide evidence to the trial court at the habeas corpus proceeding supporting this assertion.

16

and that lack of an admonition affected his decision to plead guilty.[44] Notably, the court did not state that the only avenue for attacking a judgment for noncompliance with article 26.13 is through a direct attack. Furthermore, in *Robinson*, the court of criminal appeals stated:

> A prior conviction may be held void on collateral attack if, inter alia, the accused is convicted upon a plea of guilty without first waiving his right to jury trial pursuant to Articles 1.13, 1.14 and 1.15, or his rights to appearance, confrontation and cross-examination pursuant to Article 1.15, supra; *the trial court wholly fails to admonish the accused pursuant to Article 26.13(a)*, supra, prior to receipt of his guilty plea, or otherwise fails to "substantially comply," . . . with the statute . . . .[45]

Therefore, we cannot conclude that Villarreal was required to raise his issue on direct appeal. We overrule the State's third issue.

## VI. CONCLUSION

We affirm the trial court's judgment.

LINDA REYNA YAÑEZ,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).
Delivered and filed the
23rd day of September, 2010.

---

[44] *Ex parte Tovar*, 901 S.W.2d at 486; *see Ex parte McCain*, 67 S.W.3d 204, 209 n.14 (Tex. Crim. App. 2002) (noting that "failure to give mandatory admonishments regarding deportation required under Art. 26.13(a)(4) is cognizable on writ of habeas corpus only if trial judge wholly failed to give warnings and defendant's plea was constitutionally involuntary as a consequence"); *Valdez*, 82 S.W.3d at 787 (citing *Ex parte Tovar*, 901 S.W.2d at 486); *see also Ex parte Gonzalez*, Nos. WR-41,454-02, WR-41,454-03 & WR-41,454-04, 2008 Tex. Crim. App. Unpub. LEXIS 786, at **2-3 (Tex. Crim. App. Oct. 29, 2008) (per curiam) (concluding that the habeas corpus applicant who had not been warned of the immigration consequences of a guilty plea should be allowed to present evidence supporting his claim to the trial court); *Ex parte Acosta*, 2008 Tex. Crim. App. Unpub. LEXIS 687, at ** 2-3 (ordering the trial court to conduct a habeas corpus hearing to determine whether the applicant would not have pleaded guilty if he had been aware of the possibility of deportation after not being properly admonished pursuant to article 26.13).

[45] *Robinson v. State*, 739 S.W.2d 795, 798 (Tex. Crim. App. 1987) (internal citations omitted) (emphasis added).

17