DISSENTING OPINION

Meyers, J.,
filed a dissenting opinion.
The per curiam opinion indicates that we filed and set these applications to determine several issues associated with Applicant’s double jeopardy claims. Because the per. curiam opinion does not indicate on what basis we ai-e denying relief, it is impossible to know what rationale or legal theory was applied in order to conclude *851 that Applicant is not entitled to relief. It is curious to note that the concurring opinions go to great lengths-to indicate that their vote was to procedurally default Applicant rather than to conduct any analysis of our double jeopardy jurisprudence.
In Gonzalez v. State, 8 S.W.3d 640 (Tex. Crim. App. 2000) this Court said that some double jeopardy claims may be cognizable in a writ of habeas corpus if certain conditions were met. We later stated that “when a defendant has an adequate remedy at law for his claim, he may not raise the claim in an application for a writ of habeas corpus.” See Ex Parte Townsend, 137 S.W.3d 79, 82 (Tex. Crim. App. 2004). This Court has continued to restrict access to the writ of habeas corpus even though the legislature has been active in expanding the writ process: In the years since Townsend and Gonzalez came out, the legislature has enacted additional avenues for seeking relief in applications for writ of habeas corpus-ineluding Code of Criminal Procedure Articles 11.072 and 11.073— making it abundantly clear that it wants to expand the writ process. Instead of following this directive, this Court’s response has been to find any possible way to deny applicants relief. What defendant immediately knows at the close of his trial the available avenues for getting relief? I would guess very few, which is all the more reason we should allow them to raise issues later in a writ of habeas corpus. It is hard to figure out exactly what the Court’s purpose is for trying to limit a defendant’s access to relief because I can find no legitimate law or theory for it and it is blatantly contrary to the wishes of the legislature. Apparently the Court does not want to take the time to try to resolve writ questions. As I stated in my dissent in Townsend, “The legislature provided both the writ of habeas corpus and direct appeal as avenues for relief. This Court should not usurp the power of the legislature by saying that you can onlyuse one remedy after-you have exhausted the other.” 137 S.W.3d at 83.
It is embarrassing’ and almost tragic the lengths to which this.Court will go to avoid having to analyze and decide pressing legal questions.. Just within the last two weeks .we stepped away from deciding an interesting eyewitness identification question involving the weapon-focus effect by posturing some kind of scenario where the defendant did not provide sufficient information to allow the trial court to determine that the expert’s testimony was reliable, which was in essence totally uncalled for because the trial judge completely handled the admission process of the expert testimony. . See Blasdell v. State, 470 S.W.3d 59 (Tex. Crim. App. 2015). And in Jaganathan v. State, No. PD-1189-14, — S.W.3d —, 2015. WL 5449576 (September 16, 2015), we also decided to not analyze a unique question of. law regarding whether there is or is not criminal liability for venturing .into a passing lane on a freeway. Along with the recent laches case Ex parte Perez, 445 S.W.3d 719 (Tex. Crim. App. 2014),. this, court seems to be indicating that it is truly not interested in dealing with pressing .and important legal questions. I think those joining the per curiam opinion have walked away from an interesting and probably significant legal question. My evaluation of Applicant’s claim is that it had merit and it is a shame that the per curiam opinion is not telling us on what legal or-procedural basis relief is being denied. I therefore respectfully dissent.
: DISSENTING OPINION
Johnson, J.,
filed a dissenting opinion.
We have not, at least recently, required “magic words” in order , to accomplish a legal act. Bennett v. State, 235 S.W.3d 241 *852 (Tex. Crim. App. 2007). It appears that we have, at least in this case, reverted. The record reflects that there had been a pre-trial discussion, unfortunately off the record, during which applicant “took the position that it’s all one act.” When charged by two sets of three identical indictments, a position of “it’s all one act” rather obviously raises the issue of double jeopardy: one act punished multiple times. Counsel need not utter the magic words “Objection, double jeopardy” in order to raise the issue. While inartfully stated, a plea of “former jeopardy,” coupled with a request for, and objection to the lack of, a double-jeopardy instruction in the jury charge, clearly put the trial court on notice that applicant was asserting that he was unconstitutionally being subjected to multiple punishments for a single act. That claim is apparent on the face of the record. And the trial court was on notice at a time at which it could have addressed the issue: As the state observed in its brief, “If raised and litigated, the trial court could obtain the input of the prosecutor, review case law, hear argument of counsel, and effectuate a remedy in the most timely and direct fashion.”[1] The opportunity to do all those things was present, yet the trial court, by failing to recognize and address the issue, prevented litigation on double jeopardy. Double jeopardy may be a waivable right, but applicant did not waive his rights. I would hold that applicant preserved error. Chase v. State, 448 S.W.3d 6, 28 (Tex. Crim. App. 2014) (“We also conclude that appellant was permitted to preserve error either by lodging a sufficiently specific objection in compliance with Article 36.14 or by submitting a proposed instruction in compliance with Article 36.15.”).
Applicant’s counsel on appeal apparently failed to raise the issue of double jeopardy. Appellants do not often tell appellate counsel what issues to raise and, even if they did, appellate counsel does not have to consult with the appellant because the issues raised must all be preserved in the record.[2] An appellant may not even know what issues are being appealed. An appellant’s only recourse on a claim of ineffective assistance is to file a writ asserting that claim.
The second reason we have given for not enforcing a procedural bar in this context is because there is not generally a realistic opportunity to adequately develop the record for appeal in post-trial motions. In this regard, we have noted that a post-conviction writ proceeding, rather than a motion for new trial, is the preferred method for gathering the facts necessary to substantiate such a Sixth Amendment challenge:.... Hence, in most ineffective assistance claims, a writ of habeas corpus is essential to gathering • the facts necessary to adequately evaluate such claims.
Robinson v. State, 16 S.W.3d 808, 810 (Tex. Crim. App. 2000).
Violation of the right to not be subjected to double jeopardy is a constitutional er *853 ror, which may be raised for the first time on an application for a writ of habeas corpus. Ex parte Banks, 769 S.W.2d 539, 541 (Tex. Crim. App. 1989) (“Because this error was of constitutional magnitude, we considered it on application for writ of habeas corpus even though the error was not raised on direct appeal.”); Ex parte Milner, 394 S.W.3d 502, 506 (Tex. Crim. App. 2013) (“When a double-jeopardy violation has occurred, a writ of habeas corpus is a proper venue through which to challenge the error.”). Because applicant preserved error as to deprivation of a constitutional right, he may raise it in his application for a writ, and we may address it. Ex parte Townsend, 137 S.W.3d 79 (Tex. Crim. App. 2004) does not apply here because Townsend is'a case that is only about statutory interpretation of Article 42.08 of the Texas Code of Criminal Procedure, which governs cumulation of sentences. The Townsend opinion contains neither the word “double” nor the word “jeopardy.”
No one contests that applicant was placed on bond on three felonies or that he twice failed to appear. Nor does anyone contest that he was convicted of three charges of failure to appear and that the trial of the remaining three charges resulted in a mistrial, which allows the state to retry him on those charges.[3]
I find it odd that the state argues that “[penalizing the violation of a bond rather than the singular failure to appear provides a more direct relationship between the harm and the penalty. After all, if a defendant fails to appear on three bonds, the surety forfeits the principal -in each bond, as was the case here.” Bondsmen assess the risk that a given client, will abscond and charge a. commensurate fee, usually a substantial one of at least ten percent; it «is their business to assume risk, which in some ways is like laying down chips at the Blackjack table. Sometimes they correctly assess the risk and gain substantial income for fairly little work. Sometimes they miscalculate and become liable for the principal. Again, that is their business — the way they earn their living. The state’s role in a criminal prosecution is to prosecute the offender. It is in no way the role of the state to safeguard the income of a bondsman. A defendant has already paid whatever the bondsman charged and may, at least theoretically be subject to being sued by the bondsman, but that “harm” is not relevant to any criminal charges. The bondsman will indeed suffer financial loss, but the harm that is relevant here is harm to an actual party to the lawsuit, in this case, the defendant, and to the administration of justice. Having six third-degree offenses instead of two may not harm a defendant when he also has a 75-year sentence in another case, but we are not deciding only this case; we are deciding the law, and having six sentences, even concurrent ones, instead of two is likely to have a negative effect on the Parole Board’s decision on release.
By the language of the statute, the gravamen of the offense is that the defendant *854 failed to appear. Using the eighth-grade grammar test, a phrase that is preceded by a preposition ("in”),[4] is a circumstance, not a gravamen.[5] Ergo, “in accordance with the terms of his release,” is- a circumstance that makes failure to appear - in court an offense. The sole-gravamen of the offense remains the act of failing to appear, thus the unit of prosecution is the number of times the offense was committed. Ex parte Goodbread, 967 S.W.2d 859, 860 (Tex. Crim. App. 1998) (“-For Double Jeopardy purposes,' the same' offense means the identical criminal act, not the same offense by name.... [Wjhen one cannot determine from, the State’s pleads ings whether the offenses prosecuted are the same, the court must look to the proof offered at trial.”). In this case, therefore, the state may charge him with two offenses, one for each missed court- date. Garfias v. State, 424 S.W.3d 54, 58 (Tex. Crim. App. 2014).
Much has been made of “in accordance with the terms of his release.” According to the indictments in these eases,
after being lawfully released from custody on bail for a pending felony criminal offense ... styled The State of Texas v. Eric Reed Marascio, with the condition that he subsequently appear in court, did intentionally and knowingly fail to appear for a docketed court setting in accordance with the terms of his release, namely, his Felony Surety ’Bond for $5,000.00 dated December 5, 2008, and filed with the. District Clerk of Collin County on December 11, 2008, against the peace and dignity of the State. (Italics in original.)
The “terms of his release” are that a bondsman must post bail in the amount of $5,000.- That transaction is a private contract with a third-party, not a contract with the court to be released on a personal recognizance bond.[6] He fulfilled his obligation “in accordance with the terms of his release” by hiring a bondsman to post bail. The only way in which the dignity of the trial court was harmed was that- he failed to appear. He did that on two occasions and is therefore subject to one punishment for each failure to appear: a single punishment for a single act. ’
In some cases, the terms of his release may include more than simply posting bail. And there are statutory defenses to prosecution,[7] so we need something to measure an alleged failure to appear against, hence the language “in accordance 'with the terms of his release.”
*855 We do not charge a thief with four thefts if he steals a wallet that contains cash and three credit cards; we charge him with a single theft. And if a burglar enters a home without cohsent once and commits theft, assault, and arson, he may be charged with only one burglary, not three.[8] Likewise we should not condone three charges for a single act of failing to appear.
The state Urges that if “the Court holds that jumping bail on multiple cases is a single offense, it would create a perverse incentive to jump bail when facing multiple charges and reduce the utility of the bail jumping statute.” State’s brief at 18. The logic of that assertion escapes me. The mere fact that a defendant faces multiple charges may be reason enough to abscond. And if a defendant is facing multiple charges, he would face the same number of charges, plus at least one more, when he is returned to custody. If this Court condones multiple punishments for a single failure to appear, those charges will be part of the same criminal.episode and very likely will be tried in the same proceeding, making, in most cases, concurrent sentences mandatory pursuant to Article 42.08 of the Texas Code of Criminal Procedure. Penal Code Section 88.10(f) states that “[a]n offense under this section is a felony of the third degree if the offense for which the actor’s appearance was, required is classified as a felony.” Assuming the lack of prior offenses with, which to enhance the punishment range — which may be a stretch in many cases — the defendant will be subject to a maximum of ten additional years’ imprisonment, no matter how many indictments are brought. Such a sentence may well not deter flight if the underlying charges are offenses of a higher degree and are subject to stacking.
I would address, on our own motion, a claim of ineffective assistance as to appellate counsel for failing to appeal the preserved claim of constitutional error that subjected applicant to double jeopardy. Further, I would hold that a single act of failure to appear is subject to a single punishment, no matter how many individual charges are pending.
I respectfully dissent.

DISSENTING OPINION

.Alcala, J.,
filed dissenting opinion in which Johnson, J., joined.
Without any explanation or analysis, this Court’s per curiam opinion holds that applicant is not entitled to relief. And although it acknowledges that we “filed- and set these applications to determine several issues associated with applicant’s double-jeopardy claims,” this Court’s opinion, again, without any explanation or analysis, does not even mention, the issues, much less analyze them. I determine that these claims should not be rejected on the basis of procedural default, and I conclude that the application for a writ of habeas corpus filed by Eric Reed ■ Marascio, applicant, should be granted. I, therefore, respectfully dissent.
I. Analysis of Procedural Default
With respect to the suggestion that this applicant’s double-jeopardy claims should be rejected due to procedural default, I respectfully disagree. I would apply this Court’s current precedent to this case as a basis for concluding that applicant’s claims are not proeedurally barred. See Gonzalez v. State, 8 S.W.3d 640, 643 (Tex. Crim. *856 App. 2000). Our jurisprudence sets forth (1) common-law principles applicable to ha-beas corpus relief, (2) this Court’s precedent in which it has granted habeas relief for double-jeopardy violations in cases with a procedural posture similar to this case, and (3) our current rale that permits this Court to take procedural default into consideration in a way that is more appropriate for applications for writs of habeas corpus.
First, this Court adheres to longstanding common-law principles to fairly and equitably resolve applications for writs of habeas corpus. The Texas Constitution gives this Court broad authority to issue the writ of habeas corpus. Tex. Const, art. V, § 5(c); Ex parte Davis, 171 Tex.Crim. 629, 353 S.W.2d 29, 32 (1962) (“We entertain no doubt that this Court has ample authority to issue the writ of habeas corpus in almost any conceivable case.”) (citing Ex parte Degener, 30 Tex.App. 566, 17 S.W. 1111 (1891)). As a general rule, however, post-conviction writs of habeas corpus are reserved for jurisdictional defects and denials of fundamental or constitutional rights. Ex parte Drake, 883 S.W.2d 213, 215 (Tex. Crim. App. 1994); Ex parte Sadberry, 864 S.W.2d 541, 542 (Tex. Crim. App. 1993). The right against double jeopardy is undeniably a constitutional right, made applicable to the states by the Fourteenth Amendment. See U.S. Const. amend. V, XIV; Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). Furthermore, this Court has held repeatedly that double-jeopardy protections are of a fundamental nature. See Ex parte Denton, 399 S.W.3d 540, 544 (Tex. Crim. App. 2013); Langs v. State, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006); Gonzalez, 8 S.W.3d at 643.
Rather than apply strict procedural rules to decide applications for writs of habeas corpus, this Court traditionally has applied common-law equitable principles in determining whether post-conviction relief is warranted. We have long acknowledged that the writ of habeas corpus is of common-law origin and governed by common-law equitable principles. Ex parte Smith, 444 S.W.3d 661, 664 (Tex. Crim. App. 2014); Ex parte Perez, 398 S.W.3d 206, 210-11 (Tex. Crim. App. 2013); Ex parte Gaither, 387 S.W.3d 643, 648 (Tex. Crim. App. 2012); Drake, 883 S.W.2d at 215; Ex parte Emmons, 660 S.W.2d 106, 110 (Tex. Crim. App. 1983). “[T]he writ of habeas corpus is an extraordinary remedy, any grant of which must be underscored by elements of fairness and equity.” Perez, 398 S.W.3d at 216; see also Ex parte Parrott, 396 S.W.3d 531, 534 n. 6 (Tex. Crim. App. 2013) (observing that habeas corpus relief is “an extraordinary remedy premised on equity and not on error correction as is the focus of direct appeal”). By applying the same strict procedural-default rules that apply to claims raised on direct appeal in deciding to deny habeas relief to an applicant claiming a double-jeopardy violation, this Court fails to fairly and equitably resolve applications for writs of habeas corpus in conformity with common-law principles.
Second, for over forty years, this Court has considered, and in numerous cases granted, habeas relief for double-jeopardy violations, and this Court should continue to adhere to that precedent. See, e.g., Ex parte Scelles, 511 S.W.2d 300 (Tex. Crim. App. 1974); Ex parte Calderon, 508 S.W.2d 360 (Tex. Crim. App. 1974); Ex parte Evans, 530 S.W.2d 589 (Tex. Crim. App. 1975); Ex parte Farris, 538 S.W.2d 134 (Tex. Crim. App. 1976); Ex parte Jewel, 535 S.W.2d 362 (Tex. Crim. App. 1976); Ex parte Hilliard, 538 S.W.2d 135 (Tex. Crim. App. 1976); Ex parte Pleasant, 577 S.W.2d 256 (Tex. Crim. App. 1979); Ex parte Morehead, 596 S.W.2d 895 (Tex. Crim. App. 1980); Ex parte McAfee, 761 *857 S.W.2d 771 (Tex. Crim. App. 1988); Ex parte Stover; 946 S.W.2d 343 (Tex. Crim. App. 1997); Ex parte Díaz, 959 S.W.2d 213 (Tex. Crim. App. 1998); Ex parte Ervin, 991 S.W.2d 804 (Tex. Crim. App. 1999); Ex parte Hawkins, 6 S.W.3d 554 (Tex. Crim. App. 1999); Ex parte Cavazos, 203 S.W.3d 333 (Tex. Crim. App. 2006); Ex parte Knipp, 236 S.W.3d 214 (Tex. Crim. App. 2007); Ex parte Senterfitt, No. AP-75,659, 2007 WL 1138875 (Tex. Crim. App. April 18, 2007); Ex parte Lacy, No. AP75,939, 2008 WL 2390978 (Tex. Crim. App. une 11, 2008); Ex parte Ramos, No. AP-75,962, 2008 WL 2673713 (Tex. Crim. App. July 2, 2008); Ex parte Padilla, No. AP-76,266, 2009 WL 4936403 (Tex. Crim. App. Dec. 16, 2009); Ex parte Amador, 326 S.W.3d 202 (Tex. Crim. Ápp. 2010); Ex parte Gallegos, Nos. AP-76,661 & AP-76,662, 2011 WL 4827825 (Tex. Crim. App. Oct. 12, 2011); Ex parte Chaddock, 369 S.W.3d 880 (Tex. Crim. App. 2012); Ex parte Carle, 369 S.W.3d 879 (Tex. Crim. App. 2012); Ex parte Denton, 399 S.W.3d 540 (Tex. Crim. App. 2013); Ex parte Gamble, Nos. AP-77,014 & AP-77,015, 2013 WL 1654931 (Tex. Crim. App. April 17, 2013); Ex parte Stepp, No. AP-77,011, 2013 WL 1654875 (Tex. Crim. App. April 17, 2013); Ex parte Marrufo, No. WR-80,822-01, 2014 WL 1396172 (Tex. Crim. App. April 9, 2014); Ex parte Wright, No. WR-42,963-02, 2014 WL 5369863 (Tex. Crim. App. Sept. 24, 2014); Ex parte Benson, 459 S.W.3d 67 (Tex.Crim.App.2015).
Two years ago, this Court granted relief on a subsequent application for a writ of habeas corpus under the theory that a double-jeopardy claim is essentially an actual-innocence claim for purposes of overcoming the bar on subsequent writs. See Ex parte Milner, 394 S.W.3d 502, 506 (Tex. Crim. App. 2013). We stated, “In cases claiming double-jeopardy violations, an applicant may prove actual innocence by providing facts sufficient to establish by a preponderance of the evidence that, but for a double-jeopardy violation, no rational juror could have found the applicant guilty of the challenged offense beyond a reasonable doubt.” Id.. Milner cited to Knipp, in which this unanimous Court stated, “We decide that applicant’s subsequent writ and the record establish ‘that, by a preponderance of the evidence, but for [the double-jeopardy violation] no rational juror could have found the applicant guilty [of the jeopardy-barred offense] beyond a reasonable doubt.’” Knipp, 236 S.W.3d at 217 (quoting Tex. Code Chim. Proc. art. 11.07, § 4(a)(2)). In light of its procedural similarities to an actual-innocence claim, a double-jeopardy claim should likewise not be subject to rigid procedural-default rules that this Court has recognized are inappropriate in both contexts. Under the common law that has been applied by this Court for nearly half a century, strict procedural rules are inappropriate when considering whether to grant habeas relief for a double-jeopardy violation.
Third, this Court should continue to apply its precedent in Gonzalez that has worked reasonably well in permitting certain double-jeopardy claims to be rejected on the grounds of procedural default while permitting others to be addressed on their merits through applications for writs of habeas corpus when the enforcement of procedural-default rules would serve no legitimate State interest. See Gonzalez, 8 S.W.3d at 643. In Gonzalez, this . Court described, the issue it was addressing by stating, “In this case we decide that [Gonzalez’s] ‘multiple punishments for the same offense’ federal constitutional double jeopardy claim is a forfeitable claim which may not be raised for the first time on appeal.” Id. at 640. This Court held that Gonzalez’s complaint was procedurally forfeited because ,“[t]imely raising the matter in the trial court would have provided the trial *858 court and the prosecution an opportunity to remove the basis of the objection, and it also would have provided the prosecution” the opportunity to proceed on the' second paragraph without the risk of an unnecessary retrial. Id. at 645^46. In explaining its reasoning as to why some double-jeopardy claims are subject to procedural default and others are not, this Court stated,
Our' case-law on preservation of double jeopardy claims is not a model of clarity. The overriding principles expressed by this case-law are that, because of the fundamental nature of double jeopardy protections, a double jeopardy claim may be raised for the first time on appeal ór even for the first time on collateral ’ attack when the undisputed facts .show the double jeopardy violation is clearly apparent on the face of the record and when enforcement of usual rules of procedural default serves no legitimate state interests.
Id. at 642-43 (citations omitted). In Gonzalez, this Court clearly determined that, based on a case-by-case assessment of each record, some double-jeopardy claims would be subject to procedural default while others would not, noting that not “all multiple punishments claims may be raised for the first time on appeal,” but that “Mppellate courts, even the Supreme Court, have addressed the merits of arguably unpreserved claims when ... the other party does not object.” Id. at 644. Anyone who suggests- that Gonzalez was merely a jury-charge case misunderstands this Court’s reasoning and holding. Gonzalez discussed the precise issue that is before this Court in the present case, and it held that courts have traditionally addressed even unpreserved double-jeopardy claims when appropriate.
In general, a constitutional claim is forfeited on collateral review if an applicant had the opportunity to raise that claim on direct appeal but failed to do so. See Ex parte Townsend, 137 S.W.3d 79, 81 (Tex. Crim. App. 2004).' However, due to its fundamental importance, under Gonzalez, an applicant may raise a double-jeopardy claim for the first time on collateral attack if (1) the undisputed facts show the double-jeopardy violation is clearly apparent from the face of the record, and (2) enforcement of usual rules of procedural default serves no legitimate State interest. See Gonzalez, 8 S.W.3d at 643. A double-jeopardy claim is apparent on the face of the trial record if resolution of the claim does not require further proceedings for the purpose of introducing additional evidence in support of the claim. Denton, 399 S.W.3d at 544; Knipp, 236 S.W.3d at 214, 216 n. 3. We have also indicated that, where the interests of justice outweigh the State’s interest in the finality of a conviction obtained in contravention of constitutional double-jeopardy protections, then enforcing the normal procedural rules serves no legitimate State interest. Denton, 399 S.W.3d at 545.
The Gonzalez rule has been used to both permit and deny double-jeopardy claims raised in post-conviction writ proceedings. Compare id. (finding both prongs of the Gonzalez test met and granting habeas relief On double jeopardy), with Ex parte Lopez, No. WR-78,928-03, 2013 WL 2726319, at *1 (Tex. Crim. App. June 12, 2013) (per curiam) (finding claim procedurally barred based on the absence of a double-jeopardy violation apparent 6n the face of the record). Although evaluating whether a double-jeopardy claim is clearly apparent on the face of the record requires addressing the merits of the claim in some cases, that type of analysis is not always necessary. Compare Garfias v. State, 424 S.W.3d 54, 64 (Tex.Crim.App.2014), with Guerrero v. State, 305 S.W.3d 546, 560 (Tex. Crim. App. 2009).
*859 I note here that it is inappropriate to characterize this Court’s opinion in Ex parte Townsend as a decision applicable particularly to double-jeopardy claims. See Townsend, 137 S.W.3d at 81-82. The facts underlying the post-conviction claim in Townsend were that the defendant had pleaded guilty to possession of cocaine in 1990, and he was sentenced to ten years’ imprisonment with the condition that he successfully complete boot camp in prison. Id. at 80. After he completed the boot camp, Townsend was placed on probation. Id. In 1991, the State filed a motion to revoke his probation. Id. In 1992, Townsend was found guilty of murder, and, on that same day, his probation was revoked. Id. The trial court cumulated both sentences. Id. In a post-conviction writ application, Townsend asserted that the “stacking order was improper because he had already begun his sentence by attending Boot Camp.” Id. . This Court held that Townsend had forfeited his claim by failing to raise the issue on direct appeal. Id. at 81. In light of Townsend, this Court has repeatedly stated that, in general, constitutional claims may be procedurally forfeited by a lack of objection at trial or a failure to present the complaint on appeal. See id. But, as the extensive number of cases cited above demonstrates, in the decade since Townsend was decided, this Court has not applied strict procedural-default rules to double-jeopardy, claims presented on habeas and has instead evaluated such claims on a case-by-case basis to determine whether they should be subject to procedural forfeiture or evaluated on. their merits. See Gonzalez, 8 S.W.3d at 643.
I recognize that sometimes the Gonzalez factors can be difficult to apply, but the answer to the problem should not be to throw out the entire remedy merely because there are a few flies-in'the ointment. An imperfect remedy is surely better than no remedy at all, which would occur if strict procedural default became the law applicable to double-jeopardy claims. Applying the Gonzalez rule to- this case, -1 would hold that the question before uS is one of a matter of law and that procedural default should notapply to this case.'
II. Analysis of the Merits
This Court does not explain why it rejects applicant’s claims for relief. Rather than simply state that I would grant relief as to the merits of his applications, I provide my reasoning here.
Applicant’s claims pertain to the bar on multiple punishments for the same offense.See Bigon v. State, 252 S.W.3d 360, 369-70 (Tex. Crm. App. 2008). Applicant was convicted of three offenses for a single act in failing to appear for a court setting on' three cases for which he was on bail under the failure tor appear/bail jumping statute thát states,
A person lawfully released from custody, with or without bail, on condition that he subsequently appear commits an offense if hé intentionally or knowingly fails to appear in accordance with the terms of his release.
Tex. Penal Code § 38.10(a).
Applicant violated three contracts with the trial court to appear for the charges in each of his- three’cases. In determining whether a particular course nf conduct involves one or more distinct offenses under a single statute, we must ascertain the “allowable unit of prosecution” under the statute. Bigon, 252 S.W.3d at 371-72. The bail jumping/failure' to appear statute does not expressly define the allowable unit of prosecution for the offense. Tex. Penal Code § 38.10. The statutory language, however, focuses on a defendant’s failure to'appear in accordance with the “terms of his release.” It is axiomatic that *860 applicant is a single person and could be released from his confinement only one time, regardless of the number of cases for which he was being held. Because the statutory language refers to the “terms of his release,” this suggests that the gravamen of the offense of bail jumping treats his release as a single thing regardless of whether he is being released on bail on one or many cases. In a situation involving a similar gravamen, this Court has definitively held that only one conviction is pei"-mitted. See Harris v. State, 359 S.W.3d 625, 630-32 (Tex. Crim. App. 2011) (holding that multiple convictions for indecency with a child by exposure violated double jeopardy because the gravamen of the offense was the exposure and not the number of children present). Similarly, here, the gravamen of the offense of bail jumping is the act of failing to appear in court as required by the terms of applicant’s release from confinement on the multiple cases, and not the number of cases for which applicant failed to appear. In accordance with this Court’s precedent in Harris, applicant may be convicted of only one bail jumping case for his failure to appear on the multiple cases for which he had been released from confinement. See id.
III. Conclusion
In light of this Court’s common-law approach to determining whether habeas relief is warranted, I would leave intact the current case law that applies procedural default to double-jeopardy claims on a case-by-ease basis. Thus, I would apply the rule of Gonzalez to the facts of this case and determine that applicant’s double-jeopardy claim is entitled to consideration on its merits. Because the gravamen of the offense of bail jumping is whether applicant failed to meet the terms and conditions of his release from his confinement, and because he failed to appear at a single court setting, applicant has shown, on the face of the record, that he is entitled to relief from the multiple convictions. I, therefore, would grant his application for relief.

. Ex parte Moss, 446 S.W.3d 786, 790 (Tex. Crim. App. 2014) (”[T]he resolution of Applicant’s claim turns on documents in the record....”); Ex parte Niswanger, 335 S.W.3d 611, 615 (Tex. Crim. App. 2011) ("Allegations of ineffectiveness must be based on the record, and the presumption of a sound trial strategy cannot be overcome absent evidence in the record of the attorney’s reasons for his conduct.”)

. I was startled to read in the state’s brief that by "failing to apprise the trial court and State of this issue, Applicant appears to have deprived the State of a proper opportunity to prosecute him for at least one more offense. After all, the second set,of indictments alleged a different failure to appear. Thus, if at trial Applicant’s Double Jeopardy theory holds water, the State still could have obtained a conviction for the failure to appear.” This assertion totally ignores the fact that the state did have a “proper opportunity to prosecute him for at least one more offense” and in fact did so; the jury failed to reach verdicts on the three indictments that alleged the second failure to appear, and the state is free to try appellant again on those charges.

. For the use of the eighth-grade grammar test as to another preposition, “by,” see, e.g., Stuhler v. State, 218 S.W.3d 706, 718 (Tex. Crim. App. 2007) (“Generally, adverbial phrases, introduced by the preposition 'by,' ^escribe the manner and means of committing the offense. They are not the gravamen of the offense, nor elements on which the jury must be unanimous.”) (quoting Jefferson v. State,189 S.W.3d at 315-16 (Cochran J., concurring)). '

! "The violation of the terms of release is the gravamen of the. offense,.... ” State’s brief, p. 31. .!

. Assuming that it is proper for a court to insert itself into a private civil contract between a defendant and a bondsman, may the court then criminalize any breach of that private contract? What if a defendant is meticulous about court dates but fails to check in with the bondsman?

. Tex. Penal Code Sec. 38.10
(b) It is a defense to prosecution under this section that the appearance was incident to community supervision, parole, or an intermittent sentence.
(c) It is a defense to prosecution under this section that the actor had a reasonable excuse for his failure to áppear in accordance with the terms of his release.

. He may, however, be charged separately for theft, assault, and arson, but then not for burglary.