

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. AP-76,800

## EX PARTE ALBERTO GIRON PEREZ

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS
### CAUSE NO. 2649-CR IN THE 50TH JUDICIAL DISTRICT COURT
### FROM COTTLE COUNTY

ALCALA, J., delivered the opinion of the Court in which KELLER, P.J., PRICE, WOMACK, JOHNSON, KEASLER, HERVEY, and COCHRAN, JJ., joined. MEYERS, J., filed a dissenting opinion.

## O P I N I O N

In his post-conviction application for a writ of habeas corpus, Alberto Giron Perez, applicant, raises claims of ineffective assistance of appellate counsel and seeks permission to file an out-of-time petition for discretionary review for the purpose of appealing his 1991 murder conviction. After applicant filed his application in 2011, and after an initial remand to the trial court for evidentiary development of applicant's claims, this Court issued an opinion in which it revised its approach to laches as that doctrine applies in the context of a

long-delayed application for a post-conviction writ of habeas corpus. *See Ex parte Perez*, 398 S.W.3d 206, 208 (Tex. Crim. App. 2013) (adopting Texas common-law doctrine of laches as proper standard in post-conviction writ proceedings). We then remanded the case to the trial court a second time for consideration of applicant's claims in light of this revised approach. On remand, the trial court entered findings of fact and conclusions of law and, based on applicant's unreasonable and unjustified delay in filing the application and the State's assertion that it has been prejudiced as a result of the delay, it recommended that relief be denied. Having reviewed the record and after weighing the relevant equitable considerations, we agree with the trial court's findings and conclusions. We, therefore, deny relief.

## I. Procedural History

### A. Applicant Files Writ Application Nearly Twenty Years After Conviction

In 1991, applicant was convicted of murder and sentenced to eighty-five years' imprisonment. The Seventh Court of Appeals affirmed his conviction in 1992. *Perez v. State*, No. 07–91–00225–CR (Tex. App.—Amarillo Oct. 9, 1992). In September 2011, applicant filed his initial post-conviction application for a writ of habeas corpus, in which he raised several claims of ineffective assistance of appellate counsel, including counsel's failure to raise meritorious points of error on appeal, failure to timely notify applicant that his conviction had been affirmed on appeal, and failure to advise applicant of his right to file a petition for discretionary review. In November 2011, this Court remanded the application

to the trial court to obtain affidavits and to make fact findings addressing applicant's claims. *See Ex parte Perez*, No. WR-76,604-01, 2011 WL 5420849 (Tex. Crim. App. Nov. 9, 2011).

On initial remand, the trial court received affidavits from both appellate counsel and the Cottle County District Attorney. In his affidavit, counsel stated that he has "little independent memory of the events described in applicant's writ" and could only respond to applicant's allegations "based on [his] record review and usual practice and routine." Based upon his "custom and practice" at the time, counsel would have told applicant "that he had a first appeal as a matter of right, that a second appeal was not a matter of right and that [counsel] would not file a meritless PDR, though [applicant] could." Although it was his "usual practice" to send a copy of the appellate court's opinion within the appropriate time frame for seeking discretionary review, counsel acknowledged that he "informed [applicant] of the [appellate] court's decision after the time limit had passed for [filing] a PDR." Counsel said he "do[es] not remember" why applicant did not timely receive a copy of the appellate court's opinion. In 1993, counsel sent applicant a letter "offer[ing] to visit [him in prison and] bring the file to help him with the decision whether to seek further review by writ (for an out of time pro se PDR)."[1] Counsel explained that applicant "answered [counsel's] offer with a law complaint in 1993 with a regulatory agency and later filed a civil proceeding,

---

[1] The record reflects that in June 1993, counsel sent a letter to applicant stating,

> I regret to inform you that your appeal was affirmed. I am willing to visit you next week in prison to assist you in preparing a writ of habeas corpus. I'll bring your entire file and a copy of the statement of facts and transcript with me.

in which . . . applicant indicated he knew of his right to seek further review and was denied it by [counsel's] failure to communicate." From this, counsel "infer[red] that from the time of trial, or at least since 1993, [ ] applicant has known of his right to file a PDR, pro se[.]"

In response to applicant's allegations, the Cottle County District Attorney filed an affidavit asserting that "the State has been prejudiced by applicant's delay in the filing of his writ[.]" He explained that the State was prejudiced "because of the passage of time as well as its inability to locate the murder weapon, key eyewitnesses to the shooting and its reasonable expectation that the faded memories of the witnesses will hamper the State's ability to present a case. The lead investigator . . . is elderly and retired, and is now in his eighties."

Based on the affidavits, the trial court entered findings of fact and conclusions of law. Regarding applicant's claim that he had been deprived of his right to petition for discretionary review as a result of counsel's ineffectiveness, the trial court found that counsel "did not provide notice or a copy of the [direct appeal] opinion until the time had passed for applicant to submit a pro se PDR." The trial court further found that applicant (1) "knew before the decision of the court of appeals that he could file a pro se PDR"; (2) "could have filed a pro se PDR in 1992 had counsel timely furnished a copy of the opinion"; (3) "had the information needed to file for an out of time PDR as early as 1993 . . . but failed to do so until almost two decades later"; and (4) "failed to show that absent counsel's conduct [he] would have [timely] filed for [a] PDR[.]"

With respect to the State's assertion of prejudice, the trial court concluded that applicant's delay had prejudiced the State by hampering its ability to present a case on retrial.[2] It further concluded that "the State has shown that it is prejudiced in its ability to respond because of appointed counsel's hazy memory of the events related to the PDR, that the prejudice[ ] was caused by applicant's having filed a late writ, and that applicant has not acted with reasonable diligence as a matter of law." The trial court recommended that relief be denied in light of applicant's delay in filing his application and the resulting prejudice to the State.[3]

This Court filed and set the application to determine whether the State's assertion that it would be prejudiced in its ability to retry applicant if this Court were to grant relief was sufficient to invoke the doctrine of laches. *See Ex parte Perez*, No. AP-76,800, 2012 WL 1882234 (Tex. Crim. App. May 16, 2012).

**B. Court Revises Approach to Laches in Habeas Corpus Context**

In *Ex parte Perez*, this Court altered the parameters of the equitable doctrine of laches as it applies in the context of a long-delayed application for a post-conviction writ of habeas

---

[2]   Consistent with the district attorney's affidavit, the trial court made a finding that "[t]he State has been prejudiced by applicant's delay not only because of the passage of time but also because of its inability to locate the murder weapon, key eyewitnesses to the shooting, and its reasonable expectation that the faded memories of the witnesses will hamper the State's ability to present a case [on retrial]."

[3]   The trial court further concluded that counsel "rendered effective assistance by determining which points of error he needed to raise in order to put forth [applicant's] best chance of reversible error," thereby rejecting applicant's claim that counsel was ineffective for failing to raise all possibly meritorious points of error on direct appeal.

corpus. 398 S.W.3d at 208. Specifically, we abandoned a stringent test for the applicability of laches that had required the State to demonstrate a particularized form of prejudice that was limited to its ability to respond to the application, and we instead adopted a totality-of-the-circumstances approach that is consistent with the Texas common-law definition of laches. *Id.* at 208, 211-12. We explained that, at common law, the doctrine of laches was defined as

> neglect to assert right or claim which, taken together with lapse of time and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity. Also, it is the neglect for an unreasonable and unexplained length of time under circumstances permitting diligence, to do what in law, should have been done.

*Id*. at 210 (citing *Ex parte Carrio*, 992 S.W.2d 486, 487 n. 2 (Tex. Crim. App. 1999); BLACK'S LAW DICTIONARY 875 (6th ed. 1990)); *see also id.* at 210 n. 3 (observing that Texas common-law doctrine of laches consists of two elements: (1) unreasonable delay by the opposing party, and (2) prejudice resulting from the delay) (citing *Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex. 1998)). We observed that application of the common-law doctrine of laches to a long-delayed application for a writ of habeas corpus is appropriate in light of the equitable nature of both habeas corpus relief and the laches doctrine. *Id.* at 210-11, 219. We took note of several difficulties that typically arise when an applicant delays the filing of his application for post-conviction relief for many years, including the faded memories of attorneys and witnesses and the loss of evidence and trial records. *Id.* at 211.

Although we had previously looked to the federal courts for guidance as to how laches

should apply in a post-conviction writ proceeding, we acknowledged that our adherence to the federal laches standard had, in practice, been "too rigid," had "failed to account for the State's interest in finality," and was "incompatible with fundamental principles of fairness and equity." *Id*. at 208. Under that standard, in addition to requiring a showing that the applicant's delay was unreasonable as a matter of law, the State was further required to demonstrate a particularized form of prejudice that was limited to its ability to respond to the application, thereby preventing courts from considering other types of material prejudice in deciding whether laches should apply. *See id.* at 214-15.[4] We observed that this limited prejudice inquiry had "prevented courts from taking into account the full range of relevant equitable considerations" and that, as a result, some applicants had been permitted to seek post-conviction relief "despite excessive and unjustified delays that have prejudiced the State's ability to defend long-standing convictions." *Id.* at 208, 215. We additionally noted

_____

[4]     Under the federal laches standard, the State was required to (1) make a particularized showing of prejudice, (2) show that the prejudice was caused by the petitioner having filed a late petition, and (3) show that the petitioner had not acted with reasonable diligence as a matter of law. *Ex parte Perez*, 398 S.W.3d 206, 211 (Tex. Crim. App. 2013) (citing *Ex parte Carrio*, 992 S.W.2d 486, 488 (Tex. Crim. App. 1999); *Walters v. Scott*, 21 F.3d 683, 686 (5th Cir. 1994)). The federal laches standard further limited the type of prejudice the State could show to "prejudice in its ability to respond to the allegations in the petition." *Id.* at 211-12 (citing *Carrio*, 992 S.W.2d at 488; *Walters*, 21 F.3d at 687). The State could not "merely allege prejudicial facts" but was required to "offer concrete proof of the allegations" of prejudice. *Id.* at 212 n. 6 (citing *Rideau v. Whitley*, 237 F.3d 472, 482 (5th Cir. 2000)). A showing of delay alone was inadequate, and any impact the delay may have had upon possible retrial was "not to be considered" in gauging whether the State had made the requisite showing of prejudice. *Id.* at 211 n. 5 (citing *Strahan v. Blackburn*, 750 F.2d 438, 441 (5th Cir. 1985)). The State was further required to demonstrate that, as a result of the applicant's delay, specific sources of evidence had been lost, and it was required to affirmatively demonstrate that the evidence could not be obtained through other sources. *Id.* at 212 n. 6 (citing *Walters*, 21 F.3d at 688 n. 18).

that the federal courts no longer employed the federal laches standard due to the enactment of a restrictive one-year limitations period applicable to federal habeas petitions.[5] Thus, although the federal courts had abandoned the federal laches standard in favor of a strict statute of limitations that was far less favorable to applicants, this Court had continued to apply the more permissive federal laches standard. *Id*. at 212-13.

Given these considerations, and emphasizing the State's and society's interest in the finality of convictions after a certain point in time, we held that we would apply Texas common law, rather than the federal standard, to define the parameters of laches in Texas post-conviction proceedings. *Id*. at 215-16. In doing so, we eliminated the requirement that the State make a "particularized" showing of prejudice that was limited to its ability to respond to the application, and we expanded the relevant prejudice inquiry to allow courts to "more broadly consider material prejudice resulting from delay." *Id*. at 215. Under this "more flexible common-law approach," we observed that courts would be permitted to consider "anything that places the State in a less favorable position, including prejudice to the State's ability to retry a defendant, so that a court may consider the totality of the circumstances in deciding whether to grant equitable relief." *Id*.; *see also id.* at 217 (observing that courts, in deciding whether laches should apply, may take into account any relevant equitable considerations, including the "length of the applicant's delay in filing the

---

[5] *See Perez*, 398 S.W.3d at 213 (observing that in 1996, "Congress enacted a strict one-year limitations period for federal habeas corpus that has now obviated the need for the laches doctrine in that context") (citing 28 U.S.C. § 2244(d); Pub. L. 104–132, 110 Stat. 1217, 1220 (Apr. 24, 1996)).

application, the reasons for the delay, and the degree and type of prejudice resulting from the

delay"). We explained that

> no single factor is necessary or sufficient. Instead, courts must engage in a difficult and sensitive balancing process that takes into account the parties' overall conduct. In considering whether prejudice has been shown, a court may draw reasonable inferences from the circumstantial evidence to determine whether excessive delay has likely compromised the reliability of a retrial. . . . If prejudice to the State is shown, a court must then weigh that prejudice against any equitable considerations that militate in favor of granting habeas relief.

*Id*. at 217-18 (citations and quotation marks omitted). We further acknowledged that it

would be consistent with equitable principles for a court to reject the application of laches

when the record shows that: (1) the applicant's delay was "not unreasonable because it was

due to a justifiable excuse or excusable neglect"; (2) "the State would not be materially

prejudiced as a result of the delay"; or (3) "the applicant is entitled to equitable relief for

other compelling reasons, such as new evidence that shows he is actually innocent of the

offense or, in some cases, that he is reasonably likely to prevail on the merits." *Id*. at 218.

After adopting this revised standard, we remanded the application to the trial court a

second time to provide applicant and the State the opportunity to present additional evidence

relevant to the issue of laches in light of the modified approach. *Id.* at 208, 219.

## II. Equitable Relief is Barred By Laches

On second remand, the trial court conducted a live hearing, during which it heard

testimony from applicant and several individuals who had testified at applicant's trial. After

the hearing, the trial court entered findings of fact and conclusions of law and recommended that this Court deny relief on the basis of laches. Specifically, the trial court found that:

1. Applicant was convicted on August 29, 1991.

2. His conviction was affirmed on October 9, 1992.

3. The mandate issued November 24, 1993 [sic].[6]

4. On June 17, 1993, applicant was informed by letter from his appellate counsel, Robert Estrada, that his conviction was affirmed.

5. This letter informed applicant of Estrada's willingness to assist him in filing a writ of habeas corpus.

6. After speaking with Inmate Legal Services and other inmates, applicant was made aware of the need to obtain the record in order to continue his appeal and immediately sought a copy of his transcript so that he could appeal to the Court of Criminal Appeals.

7. Although he was aware of the ability to procure a transcript by paying for it, he instead pursued various avenues to obtain it from Estrada.

8. On November 15, 1993, applicant filed a motion to dismiss Estrada as appointed counsel and subsequently began the grievance process with the State Bar Association.

9. On April 5, 1994, applicant filed a pro se writ of mandamus in the Seventh Court of Appeals to compel the trial court to rule upon his motion to dismiss. His petition asserts that a copy was sent to the Court of Criminal Appeals.

10. At some point prior to September of 1995, applicant, with the assistance of a fellow inmate, filed a pro se lawsuit against Estrada in Anderson County, Texas.

11. On September 15, 1995, the judge ordered Estrada to produce applicant's file and the transcript from his trial.

---

[6] Finding number three contains a typographical error in that it lists the year of the mandate's issuance as 1993; the record indicates that the mandate in fact issued in 1992.

12. On November 9, 1995, applicant, with the assistance of a fellow inmate, filed a pro se motion notifying the court of Estrada's noncompliance and requesting sanctions.

13. Applicant received the requested documents the following day, November 10, 1995.

14. Applicant was aware of petitions for discretionary review and writs of habeas corpus as early as June of 1993.

15. Applicant did not file a writ of habeas corpus requesting an out-of-time petition for discretionary review until September 20, 2011.

16. Applicant did not make any request for another attorney from the trial court or seek the help of his family in obtaining an attorney.

17. Applicant's various pro se filings demonstrate familiarity with the legal system and the ability to file legal documents on his own behalf.

18. Applicant's claim that he did not know about his right to [file] a petition for discretionary review or the writ process for securing an out-of-time petition is incredible.

19. Applicant's claim that he would have pursued an out-of-time petition for discretionary review had he known is thus also incredible.

20. Applicant, through his current attorney, has disclaimed any discovery of new evidence as being a cause for the delay.

21. The Cottle County Sheriff's Office is no longer in possession of any evidence or documents related to the investigation of this case.

22. The lead investigator, retired Texas Ranger Leo Hickman, is in his late 80s, is in poor health, and is unlikely to be able to appear at a second trial or, if he did, to have any independent recollection of the investigation.

23. Clarence Lee Poteet, one of two eyewitnesses to the murder who testified at trial, recalls most of what he saw and could refresh his memory based on his prior testimony.

24. [Poteet's] wife, Betty Fay Poteet, was present with him at the time [of the murder] but has memory problems due to medical issues.

25. Karl Holloway, a retired DPS Trooper who responded to the scene, has some recollection of his role at the scene, but his role was minimal.

26. Most of the people who testified at trial in 1991 could not be located, including all of the medical professionals who participated in the autopsy on the victim.

27. To the extent that any witnesses would be deemed unavailable for purposes of the Confrontation Clause, recitation of prior testimony is far less persuasive than live testimony.

On the basis of these findings, the trial court concluded that:

1. Applicant's delay in pursuing an out-of-time petition for discretionary review is both unreasonable and unjustified.

2. The [loss] of evidence (witnesses, memories, documents, and physical evidence) in the intervening period of over almost twenty-two years has prejudiced the State's ability to retry the case and made it more likely that the reliability of a retrial would be compromised.

3. Both the State and society have a strong interest in the finality of this conviction, which was affirmed over twenty-one years ago.

4. There is no reasonable likelihood that applicant will prevail on the merits of his petition for discretionary review.

5. There is no other reason in law or equity not to apply laches in this case.

We have conducted an independent review of the record and, having determined that the trial court's findings and conclusions are supported by the record, we adopt them.[7] The record, viewed in its entirety, reflects that applicant understood that he could seek further

---

[7] *See Ex parte Reed*, 271 S.W.3d 698, 727 (Tex. Crim. App. 2008) (observing that this Court "will ordinarily defer" to trial court's findings and conclusions that are supported by the record).

review of his conviction as early as 1993, but waited until 2011, nearly twenty years later, to file the present application for post-conviction relief.[8] The record also reflects that applicant (1) believed he needed a copy of his records so that he would "be able to follow up with [his] appeal," (2) understood that a record could be purchased,[9] and (3) instead contacted counsel asking for his records and waited indefinitely for counsel to provide him a copy of the trial transcript. The record thus reflects that applicant's explanation for his delay in seeking a writ of habeas corpus rests on his claim that he lacked access to the record, as opposed to a claim that he lacked awareness of the availability of further review. To the extent applicant suggests that his delay is justifiable because it was primarily due to his unawareness of the proper procedural vehicle by which to seek further review, we defer to the trial court's finding that such a claim is not credible in light of applicant's various pro se filings demonstrating a familiarity with the legal system and his ability to file legal

---

[8]   During applicant's habeas testimony, the following exchange occurred indicating that applicant was aware of his right to pursue further review of his conviction:

> State: What did you want [counsel] to do [after the time for filing a PDR had passed]?
> Applicant: That he would work with my documents. That way, I could be able to follow up with my appeal.
> State: So you knew that you had the right to go forward, didn't you?
> Applicant: I . . . didn't know. It didn't exist. I didn't know anything about the Court of [Criminal] Appeals.

[9]   Applicant's testimony at the habeas hearing indicates that, in 1997, he inquired with the Wilbarger County Clerk about the cost of purchasing a record. He stated that he would have purchased the record at that time "if [he] had the money."

documents on his own behalf.[10]

Furthermore, even were we to accept applicant's claim that he diligently sought to assert his rights during the several years immediately following the affirmance of his conviction, we note that the record is devoid of anything to suggest that applicant took any steps whatsoever to assert his rights between the years of approximately 1997 and 2011, when he filed the present application.[11] When asked by the State at the habeas hearing whether there was any justification for the delay, applicant answered, "If I knew how to read . . . and write [English], I wouldn't have needed help. Because I don't know, I had to depend on other people." Later in the hearing, when asked the same question again, applicant said that he "didn't know the law"; that he "didn't know" that writs of habeas corpus "existed"; that he "didn't know anything about the Court of [Criminal] Appeals"; and that he had filed his application as soon as he found out about the writ application process from another inmate in 2010. Even were we to accept applicant's assertions as true, they are insufficient to justify applicant's inaction and neglect for a period of more than fifteen years, during which time period a court may reasonably expect an applicant to, at the very least, make diligent inquiries and take steps to educate himself about the proper procedures for seeking

---

[10] *See, e.g., Ex parte Thompson*, 153 S.W.3d 416, 417-18 (Tex. Crim. App. 2005) (observing that, "because the habeas court is in a better position to make determinations of credibility . . . we should defer to those [credibility] findings if they are supported by the record").

[11] Applicant testified that from 1993 to 1997 he called and wrote counsel for the purpose of obtaining his records, but counsel "never responded." After the conclusion of applicant's civil law suit against counsel in 1995, applicant said that counsel turned over "a little bit, but not everything" that applicant believed he needed to pursue further appeals.

additional review. Because the record here reflects that applicant, although aware of the availability of further review, made no inquiries regarding the proper procedures to follow for nearly twenty years, we determine that his claim of ignorance of the law is inadequate to excuse his lengthy delay.

In accordance with the trial court's findings and conclusions, we conclude that applicant's delay is unreasonable and unjustified in light of his failure to diligently assert his rights within an appropriate time period once he realized that he had been deprived of his right to seek discretionary review. We further agree with the trial court's conclusion that the State has been prejudiced as a result of the delay in light of the faded memories of witnesses and the lack of available evidence, both of which have compromised the reliability of any future trial proceedings. *See Perez*, 398 S.W.3d at 219 (stating that laches should apply as bar to relief "when an applicant's unreasonable delay has prejudiced the State, thereby rendering consideration of his claim inequitable"). The trial court also took into account the State's and society's interest in the finality of this now twenty-three-year-old conviction as a relevant factor, and we agree with the trial court's assessment that, under these circumstances, that factor weighs heavily against applicant's request for equitable relief. *See id.* at 218 (observing that, under expanded prejudice inquiry, courts are "permitted to consider the State's and society's interest in the finality of a conviction in determining whether laches should apply"). Although applicant has attempted to justify his delay by claiming that he was unaware of the proper procedural vehicles by which to further challenge

his conviction in this Court, we find that those justifications are inadequate to warrant a grant of equitable relief in light of the excessive delay and applicant's failure to take any meaningful action to assert his rights during the past decade and a half. Agreeing with the trial court's assessment that there are no other equitable considerations that weigh in favor of granting relief, we hold that the application is thus barred by the equitable doctrine of laches. Relief is denied.

Delivered: October 8, 2014

Publish