**DISSENT and Opinion Filed June 4, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00438-CR**

**THE STATE OF TEXAS, Appellant**
**V.**
**BRADLEY SHAVERS, Appellee**

**On Appeal from the County Criminal Court No. 5**
**Dallas County, Texas**
**Trial Court Cause No. MC19-A6636**

## DISSENTING OPINION ON DENIAL OF MOTION FOR RECONSIDERATION EN BANC

Opinion by Chief Justice Burns, joined by Molberg, Goldstein, Garcia, and Kennedy, JJ.

The panel in this case examined the circumstances surrounding the trial court's granting of appellee's motion for new trial and upheld the habeas court's decision to grant relief. *State v. Shavers*, No. 05-22-00438-CR, 2003 WL 6139453 (Tex. App.—Dallas Sep. 20, 2023, no pet. h.) (not designated for publication). This case is now before this Court on the State's motion for en banc reconsideration of the panel opinion. *See* TEX. R. APP. P. 41.2, 49.7.

I write to express my disagreement with the panel's opinion, and I dissent from the full court's denial of en banc reconsideration. First, because evidence at the habeas hearing indicates the trial court granted the motion for new trial (Motion)[1] for reasons other than a lack of sufficient evidence, and because the record is not void of evidence of an alternate meaning to the boiler-plate "contrary-to" language contained in appellee's Motion, I do not agree the court of criminal appeals' holding in *Sledge v. State* is applicable to this case.[2] 666 S.W.3d 592 (Tex. Crim. App. 2023). Consequently, I do not agree with the panel's remand of the case to the trial court for entry of a judgment of acquittal.

Additionally, there are other problems with the panel opinion. I do not believe the habeas court's finding—that the Motion was filed with the clerk—is supported by the record; there is no evidence that anyone filed the Motion with the clerk, the copy of the Motion in the habeas record is not file marked, and no witness testified he or she filed the Motion. Accordingly, I would not defer to the habeas court's finding that the Motion was filed. Moreover, there is substantial evidence that appellee's claim is barred by laches—appellee waited over a decade to file his habeas writ application, he has not offered any justification for his delay, and the State

---

[1] As the panel did in the opinion, I will refer to the single-page document containing both the motion for new trial and the order signed by Judge Fuller granting it—as the Motion.

[2] A defendant must be granted a new trial when the verdict is contrary to the law and the evidence. TEX. R. APP. P. 21.03(h). It is common after almost all trials for a boilerplate motion for new trial (identical to the one filed in this case) to be filed after a jury verdict to extend record deadlines.

would be highly prejudiced if it were forced to retry this case. And finally, I believe that the panel's opinion should be addressed by this Court en banc because its holding fails to follow controlling precedent—certainly an extraordinary circumstance that warrants en banc review.

For these reasons, I would grant the State's motion for en banc consideration.

## **The court of criminal appeals opinion in *Sledge v. State* is not applicable to this case.**

**Unlike the record in *Sledge*, this record contains abundant evidence of an "alternate meaning" demonstrating the Motion was not a sufficiency challenge.**

The State asserts the court of criminal appeals' opinion in *Sledge v. State*, 666 S.W.3d 592 (Tex. Crim. App. 2023), does not apply to the facts of this case. I agree.

In *Sledge*, the court of criminal appeals examined whether an accused may be tried again for the same offense without violating principles of double jeopardy when a trial court grants a motion for new trial based only on the bare recitation that the "the verdict is contrary to the law and evidence." *Id.* at 593. The court held such a bare recital, without more, constitutes a legal sufficiency challenge and only a sufficiency challenge. *Id.* at 601. The court pointed out, however, that contrary-to language in a motion for new trial is not always a challenge to the sufficiency of the evidence:

> [T]his opinion does not stand for the proposition that the language "the verdict is contrary to the law and evidence" <u>always</u> raises a legal sufficiency challenge. Rather, we merely hold that a contrary interpretation cannot be reached beyond the confines of an <u>absent</u> record.

*Id.* at 602 (emphasis added).

The court of criminal appeals then pointed to opinions in which it held motions for new trial containing contrary-to language were in fact not challenges to the sufficiency of the evidence because the records in those cases contained evidence of alternate meanings to that language. *Id.* at 601 (*citing Ortega v. State*, 668 S.W.2d 701, 707 (Tex. Crim. App. 1983) (op. on reh'g), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997) (finding the instruction varied from the proof, making the guilty verdict "contrary to the law and evidence," and acquitting as a result); *see also Idrogo v. State*, 589 S.W.2d 433, 434 (Tex. Crim. App. 1979) (finding the verdict was contrary to the law where the jury convicted on an offense not submitted to them in the jury instructions).

The court ultimately held the contrary-to language in the motion for new trial in *Sledge* constituted a challenge to the sufficiency of the evidence, but only after the court (1) failed to find any "alternate meaning" to the language after looking through the record, motion, arguments presented at the hearing, and order; and (2) failed in its attempt to "infer any alternate meaning" at the time the motion was granted. *Sledge*, 666 S.W.3d at 600, 602. Additionally, the court held that a trial court's granting of a new trial motion based upon insufficiency grounds violates the principle of double jeopardy and prevents the trial court from entering any other judgment than an acquittal. *Id.* at 601–02.

–4–

The language in *Sledge* demonstrates the court of criminal appeals intended the opinion be narrowly construed and applied only in cases where the record is void of any evidence providing an alternate meaning to the contrary-to language. The court stated, "we stress that our opinion should not be construed to endorse vague motions for new trial." *Id.* at 601. The court also pointed out "'this opinion does not stand for the proposition that the language 'the verdict is contrary to the law and the evidence' always raises a legal sufficiency challenge. Rather, we merely hold that a contrary interpretation cannot be reached beyond the confines of an absent record.'" *Id.* at 602. In sum, the *Sledge* court instructed appellate courts to find a motion for new trial containing language "the verdict is contrary to the law and the evidence" as raising a sufficiency challenge only when the record contains no other possible interpretation. *Id.*

> The panel in *Shavers*, in reliance on *Sledge*, did the exact opposite:
>
> Shavers' form Motion, like the motion in *Sledge*, included only the bare recital that he "moves this Judge to grant a new trial for the reason that the verdict is contrary to the law and evidence." Accordingly, that Motion constituted only a legal sufficiency challenge. And because Judge Fuller granted the Motion, concluding that the evidence was insufficient to support the guilty verdict, Shavers "must [have been] acquitted" at that time.

*Shavers*, 2023 WL 6139453, at *7 (internal citations omitted). Judge Fuller never testified he concluded that the evidence was insufficient. The panel is injecting facts into the record that do not exist. Although appellee's Motion contains only the contrary-to language, unlike the record in *Sledge*, the record here contains abundant

–5–

evidence of an "alternate meaning" demonstrating the Motion was not a sufficiency challenge.

First, I note appellee's testimony at the habeas hearing demonstrates he did not urge his Motion based on a lack of sufficient evidence. During the habeas hearing, appellee testified he urged Judge Fuller to grant his Motion because:

- He was denied appointed counsel after requesting Counsel;

- He objected to Officer Maddox's unrelated third-party statements that could have improperly influenced the jury;

- He was subject to prosecutorial misconduct;

- The Jury heard about his prior arrests and the pending cases he had at the time of trial; and

- At the time of trial, he suffered from both mental and physical conditions that restricted his mental capability to defend himself to the best of his ability.

Not one of those grounds, however, equates to a claim that the evidence was insufficient to support the jury's verdict.

Moreover, despite the panel's claim that Judge Fuller granted the Motion because he "conclude[ed] that the evidence was insufficient to support the guilty verdict," when asked why he granted the Motion, Judge Fuller testified, "[f]or the life of me, I cannot remember why." When pressed further, Judge Fuller testified that he "believe[d] it had to do with something that actually happened in the trial itself, but I don't recall exactly what it was." There is no evidence that Judge Fuller

granted the Motion because he believed the evidence was insufficient to support the jury's verdict.

Additionally, appellee's and Judge Fuller's testimony showed they both contemplated a second trial upon the granting of appellee's Motion—an act that would be prohibited upon a finding that the evidence was insufficient to support the jury's verdict of guilt. *See Hudson v. Louisiana*, 450 U.S. 40 (1981) (holding that when the record shows that a motion for new trial was granted based on legally insufficient evidence, a retrial is barred by double jeopardy); *see also State v. Savage*, 933 S.W.2d 497, 499 (Tex. Crim. App. 1996) (holding that when a jury returns a guilty verdict and the trial court grants the defendant's motion for new trial based upon legal insufficiency of the evidence, double jeopardy prevents the trial court from entering any judgment other than an acquittal); *Smith v. State*, 15 S.W.3d 294, 301 n. 3 (Tex. App.—Dallas 2000, no pet.) (holding that when a trial court grants a motion for new trial based on legal insufficiency of the evidence, the only further action permitted by the Double Jeopardy Clause is the entry of a judgment of acquittal).

Judge Fuller testified that when appellee presented the Motion, he informed appellee he had "received a good probation" and "he should seriously consider it." Judge Fuller's warning to appellee regarding the risks associated with a second trial demonstrates Judge Fuller contemplated appellee facing a second trial upon his

–7–

granting of the Motion—a result that is constitutionally incompatible with a finding of legally insufficient evidence.

Appellee testified that after Judge Fuller granted the motion, the Judge appointed him an attorney and told him to "be sure his contact information was up to date, because he would be contacted about the appointed attorney and a new trial date." Appellee further testified that because he did not receive any contact about the new trial, he contacted the court and left a message asking about the trial and new counsel.

Both appellee and Judge Fuller believed appellee would face a second trial as a result of Judge Fuller's granting of the Motion. This suggests neither of them understood Judge Fuller's ruling on the Motion to have been sufficiency-based.[3]

Pursuant to *Sledge*, appellee's and Judge Fuller's testimony provides an "alternate meaning" to the Motion's contrary-to language. Unlike *Sledge*, herethe record provides context and justification for the trial court's granting of the Motion for reasons other than a lack of sufficient evidence. The Motion's contrary-to language is not a "bare recital" that can only be interpreted to constitute a challenge

---

[3]The habeas court's findings of facts and conclusions of law also do not support the panel's holding that Judge Fuller granted the Motion due to insufficient evidence. In the habeas court's conclusions of law, the court recited, appellee's "case is reverted back to the point of an information being filed for the offense of DWI." The habeas court did not find that Judge Fuller granted the Motion due to a lack of evidence. In other words, the habeas court's conclusion supports the inference that the Motion was not granted due to a lack of sufficient evidence.

to the sufficiency of the evidence. Accordingly, I do not agree that *Sledge* applies to this case.

I also note that unlike *Sledge*, where the State was aware the defendant filed a motion for new trial but chose not to oppose or appeal the trial court's granting of the motion, here there is no evidence the State had any knowledge of the Motion until appellee filed his habeas petition. *See Sledge*, 666 S.W.3d at 594, 601. The Motion was not found in the clerk's file, and Judge Fuller testified he was "not sure" whether a prosecutor was present when he granted the Motion. In fact, appellee admitted he never brought the Motion to the State's attention. The trial court's granting of the Motion was the result of an ex parte proceeding that left the State with no opportunity to respond or appeal. And the court of criminal appeals has repeatedly held that the State has a right to contest and be present at all new trial hearings. *State v. Gonzalez*, 855 S.W.2d 692, 694 (Tex. Crim. App. 1993); *Harvey v. State*, 201 S.W.2d 42, 45 (Tex. Crim. App. 1947). As a result, I do not agree that the trial court's granting of the Motion requires the habeas court to enter an order of acquittal.

**The Habeas Court's finding that the Motion was filed is not supported by the record.**

The State also takes issue with the panel's holding that the record supports the habeas court's finding that the Motion was filed with the clerk's office. Because there is no evidence the Motion was ever filed, I agree with the State and would hold

the habeas court abused its discretion in finding the Motion was filed. The habeas court found (1) Judge Fuller signed the Motion within ten days of the jury verdict, (2) it was common for Judge Fuller to hear motions at the bench and not make a record, (3) the Motion was filed with the clerk's office, (4) appellee's attorney gave him a copy of the Motion, (5) the Dallas County Clerk's office routinely lost records from court's files, and (6) "[t]here is evidence that does support that [appellee's] motion for new trial is one of the missing documents from the court clerk's file." Consequently, the habeas court found "[appellee's] case is reverted back to the point of an information being filed for the offense of DWI." In other words, the habeas court found that because appellee had filed the Motion, he was entitled to a new trial. Also worth noting is that the testimony of the clerk's office having incomplete records was in the twelve intervening years, and there is not any evidence of problems with the clerk's office at the time in question.

A review of the evidence submitted to the habeas court during the hearing demonstrates there is no evidence the Motion was filed.

### Judge Fuller's testimony

Judge Fuller testified that when he granted the Motion, he told appellee he had "given him a good probation" and "he should seriously consider it," implying appellee might not obtain the same result after a second trial. He told appellee to "think long and hard about what he [was] considering doing." After Judge Fuller

signed the Motion, he handed it back to appellee and "advised him he may want to think it over before filing it."

Fuller explained to appellee that if he decided he wanted a new trial, he would need to file the Motion with the clerk. Fuller testified that he did not accept the Motion for filing and that "he did not believe" appellee filed the Motion. Fuller stated appellee was alone and did not have the assistance of counsel when he requested a new trial. Fuller has no recollection of lawyer Charlie Humphreys working on this case. Fuller testified "if that motion for new trial had been filed, [he] would expect a file marked copy to have been given back to [appellee]." Additionally, Fuller testified:

> Q. In your experience, when a paperwork motion, pleading, what-have-you, is filed with the Court, is it generally marked in some way to indicate that it has been filed with the Court?
>
> A. It is a file marked copy and they are given a copy of it.
>
> Q. Do you see any file marking on this particular document?
>
> A. I do not see any file mark on that document.
>
> Q. Have you ever seen a copy of this motion for new trial that had a file marking on it?
>
> A. I have never seen any copy of this document that has a file mark on it, and I would be –
>
> Q. And would the proper procedure, if the motion for new trial had been properly filed, would it have been to file mark it?
>
> A. If defendant did file it, it would definitely have been properly file marked.

Fuller stated that before he placed appellee on probation, he asked his court staff if appellee had filed the Motion. He was informed that appellee had not. Fuller testified, ". . . I'm sure I checked to see if he filed it." Fuller explained that if appellee had filed the Motion, he would have "pulled the case back and set it for a new trial." Because appellee had not filed the Motion, Fuller sentenced appellee to two years' probation.

Fuller testified that a "number of things happened later on that involved the probation and the probation revocation", yet Fuller did not recall appellee ever mentioning the issue of a new trial during those proceedings. Nor did Fuller have any recollection of refusing to speak to appellee about the Motion. Fuller testified that "if [he had been] on the bench, then certainly [appellee] had a right to approach the bench on that, but I don't remember any other conversation with him about that."

**Appellee's testimony**

Appellee testified he did not file the Motion. He believed Charlie Humphreys, an attorney he claims he hired to assist him in obtaining a new trial, had filed the Motion. Appellee claimed Humphreys gave him a copy of the filed trial court's order granting him a new trial. Appellee did not have any explanation why his motion for new trial was not file-marked.

During his testimony, appellee admitted he waited twelve years to raise his argument he was entitled to a new trial in the underlying DWI case until he was

recently charged with a DWI offense in Florida that carried mandatory prison time as a penalty—despite many opportunities in the intervening twelve years to do so. During the original sentencing for probation for the underlying DWI offense, appellee never mentioned the issue of a new trial to the State, Judge Fuller, nor his to his probation officers. After a probation violation warrant was filed in his case, appellee made several court appearances in regard to the violation, but never argued he was entitled to a new trial. In 2009, appellee was arrested and charged with a Felony DWI in Dallas County. He made court appearances in that case, eventually pled guilty to felony DWI, and was placed on community supervision. That offense was raised to a felony based upon the conviction in this case. Yet, during all of the proceedings associated with that case, appellee never raised the issue of a new trial on this underlying conviction. Further at the hearing, Appellee was impeached by his felony conviction in Dallas and his pending felony conviction in Florida to show a motive to fabricate his testimony.

### Charlie Humphreys's testimony

Humphreys testified he did not remember representing appellee. Humphreys explained that if he had handled appellee's motion for new trial, and the trial court had granted it, he would have filed it and given a copy to appellee. Humphreys noted his signature was not on the motion and that his normal practice was to both fill out and sign the motions he presented to the trial court. Additionally, Humphreys stated that if he had presented a motion for new trial to the trial court, he would have made

sure that the State was present. Further, although appellee produced a $300 receipt he claimed he received from Humphreys, Humphreys testified he had no idea what case the $300 receipt was to be applied to; Humphreys stated that he represented appellee in another felony case pending in Dallas County.

In sum, as the State points out, no filed-marked copy of the Motion exists, only an unmarked copy; Judge Fuller testified he did not accept the Motion for filing himself; Judge Fuller testified the clerks informed him the Motion had not been filed; Humphreys testified he did not recall filing the Motion; and neither appellee nor any court employee testified the Motion was ever given to a clerk. *See Jamar v. Patterson*, 868 S.W.2d 318, 319 (Tex. 1994) (holding that a document is "filed," not when it is file-stamped, but "when it is tendered to the clerk, or otherwise put under the custody or control of the clerk"). In fact, in the opinion, the panel points out "reasons exist to question whether the Motion was filed." *Shavers*, 2023 WL 6139453, at *4. The panel is correct—there is zero evidence that the Motion was filed. Indeed, the evidence supports only one conclusion—that appellee decided not to file the Motion and risk imposition of a harsher penalty. I also note that the habeas court never explained how it resolved the conflict between the testimony—demonstrating the motion was not filed—with its finding that it was filed. And is appellee's accepting his probated sentence before Judge Fuller approximately thirty days after Fuller signed the motion, and appellee reporting to a probation officer for two years, and accepting a sentence on his probation revocation, all without ever

–14–

raising again his motion for new trial, not strong circumstantial evidence, close in time to the events in question, that appellee never filed the motion?

In my opinion, the trial court's finding that the Motion was filed is not supported by the record; deference to the trial court is not abdication. Accordingly, I would not defer to the habeas court's finding. *See Diamond v. State*, 613 S.W.3d 536, 544 (Tex. Crim. App. 2020); *see also See State v. Groves*, 837 S.W .2d 103, 106 (Tex. Crim. App. 1992) (declining to defer to a trial court's factual findings that were not supported by the record); *State v. Gonzalez*, No. 13-14-00147-CR, 2015 WL 5233888, at *4 (Tex. App.– Corpus Christi-Edinburg Sept. 3, 2015, no pet.) (holding that although we defer to a trial court's factual findings when they are supported by the record, we conclude the record in this case does not support the trial court's finding, thus, the trial court abused its discretion in granting relief).

**The doctrine of laches bars appellee's requested relief.**

I also write because I disagree with the panel's dismissal of the State's claim that laches bars consideration of appellee's habeas writ. The panel rejected the State's laches argument after considering laches as it relates to a trial court's acquittal order and not as it applies to a trial court's granting of a new trial. The panel then concluded, "[w]e have found no authority that would support applying the defense of laches after the fact to void [appellee's] acquittal."

Because the record in this case—unlike the one in *Sledge*—provides context and justification for the trial court's granting of the Motion for reasons other than a

lack of sufficient evidence, the trial court's granting of the Motion was not an acquittal. However, to the extent the trial court's granting of the Motion was the functional equivalent of an acquittal order, I do not agree that laches could not bar consideration of a habeas writ filed twelve years after the challenged proceeding. *See Ex parte Perez*, 445 S.W.3d 719, 721 (Tex. Crim. App. 2014) (holding that the common-law doctrine of laches applies to criminal habeas proceedings).

The application of laches requires two elements: (1) unreasonable delay by an opposing party, and (2) prejudice resulting from the delay. *Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex. 1998). The proof necessary to establish the application of laches is a "sliding scale." *Ex parte Perez*, 398 S.W.3d 206, 217 (Tex. Crim. App. 2013). Thus, "the longer an applicant delays filing his application, and particularly when an applicant delays filing for much more than five years after conclusion of direct appeals, the less evidence the State must put forth to demonstrate prejudice." *Id.* at 218. To address the sliding scale, courts should consider (1) the length of the applicant's delay requesting habeas relief, (2) the reasons for the delay, (3) the degree and type of prejudice affecting the State as caused by the delay, and (4) whether the delay can be excused. *Ex parte Bowman*, 447 S.W.3d 887, 888 (Tex. Crim. App. 2014).

Here, appellee waited over a decade to file his application for habeas relief— approximately 2.4 times longer than the five-year period that gave the CCA pause under *Perez*. 398 S.W.3d at 217-18. And nothing in the record justified appellee's

delay. Moreover, the State's file had been destroyed based upon the age and degree of the offense—meaning any procedural or substantive evidence in the State's possession that could refute or verify appellee's claims was gone. In other words, the State is severely prejudiced by appellee's delay in filing his habeas application. Accordingly, I disagree that the doctrine of laches would not bar review of appellee's habeas writ.

**En banc standard**

We will rehear a case en banc where it is necessary to secure uniformity of the Court's decisions and in other extraordinary circumstances, as we deem necessary. TEX. R. APP. P. 41.2(c); *Chakrabarty v. Ganguly*, 573 S.W.3d 413, 416–17 (Tex. App.—Dallas 2019, no pet.) (en banc). The standard set forth in Rule 41 is sufficiently broad to afford the Court the discretion to consider a case en banc "if the circumstances require and the court votes to do so." *Wal-Mart Stores v. Miller*, 102 S.W.3d 706, 708 n.1 (Tex. 2003). While en banc reconsideration is disfavored under the rule, I believe it is appropriate here.

Here, the panel refuses to look at and follow the plain language of controlling precedent—the court of criminal appeals' holding in *Sledge*. 666 S.W.3d 592. I note that appellee never briefed the issue set forth in *Sledge*. He did not, at any point, advance a claim that the evidence was insufficient to sustain a guilty verdict. Is it not an extraordinary circumstance when a panel refuses to follow the higher court's clear precedent and grants relief not preserved nor briefed by the appellee?

–17–

I also note the State never had an opportunity to argue the evidence was sufficient. A trial court errs when it grants a motion for new trial based on insufficient evidence when the defendant failed to advance any proof at the motion for new trial hearing demonstrating the evidence was insufficient. *State v. Zalman*, 400 S.W.3d 590, 595 (Tex. Crim. App. 2013). Moreover, a judge may not grant a new trial on mere sympathy, an inarticulate hunch, or simply because he believes the defendant received a raw deal or is innocent. *Id.* at 593.

Yet, here the panel sua sponte decided appellee was entitled to an acquittal even though he never raised this issue in his briefing or during his hearing.[4] Moreover, the habeas court never addressed *Sledge* as it relates to appellee's writ. In the habeas court's conclusions of law, the court determined appellee's "case is reverted back to the point of an information being filed for the offense of DWI." In other words, the habeas court believed appellee was entitled to a new trial—not an acquittal. I believe this is an extraordinary circumstance that requires en banc review by this Court.

I also believe that the panel's decision has expanded the very limited power of a trial court and granted trial judges a power that they never had before, which invites abuse. According to the panel opinion, any time a trial judge grants the standard form motion for new trial, a defendant is acquitted. According to the panel

---

[4] The panel stated, "we acknowledge that our understanding of the posture of Shavers's 2007 case is now different from the habeas court's understanding." *Shavers*, 2023 WL 6139453 at *7.

opinion, any judge in our Fifth District can ex parte sign a standard motion for new trial and acquit a defendant.[5]

Bare bones motion for new trial forms are in every clerk's office in every criminal courtroom in Dallas. They are filed regularly by defense attorneys at the conclusion of a punishment phase of trial at the request of court reporters to extend reporter records' deadlines. A trial judge could inadvertently sign such a motion leading to unintended acquittals. This is a very real possibility of the panel's opinion in this case. Thus, I believe en banc review is warranted.

In sum, because the panel ignores the clear holding of *Sledge*; the Motion was granted ex parte; the remedy of an acquittal was not raised in the writ, not preserved for appeal, nor even requested on appeal; the habeas findings are wholly unsupported by the record; laches bars consideration of a habeas writ filed twelve years after the challenged proceeding; and the holding greatly increases the limited power of a trial judge to acquit after a jury finding of guilt, I dissent from the Court's refusal to reconsider the panel's opinion.

---

[5]When I was the new judge of the Criminal District Court of Dallas in 2007, there was an appeal from that court pending in the Fifth Court of Appeals. It was a murder case, with a significant punishment sentence. The clerk's record contained a signed, granted bare bones motion for new trial, identical to the form used in this case. There also was no explanation whatsoever in the record why the judge that preceded me granted that motion. The Fifth Court of Appeals as it then existed, properly remanded the case to me for a hearing regarding why the motion was granted. During the hearing, the prior trial judge testified she had been going through a big stack of paperwork, signing a large number of documents, and mistakenly granted the motion for new trial. Yet, under the Shaver's panel opinion holding, there would have been no need to abate, the record below would be deemed irrelevant, and the appellant would have been entitled to an instant acquittal.

I would grant the State's motion for en banc reconsideration, reverse the habeas court, and reinstate appellee's conviction. I therefore respectfully dissent.

/Robert D. Burns, III/
ROBERT D. BURNS, III
CHIEF JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
220438DF.U05